PIONEER LIFE INSURANCE COMPANY OF ILLINOIS, Plaintiff-Appellee, v. JEFFREY WOODARD, Defendant-Appellant (The Human Rights Commission *et al.*, Defendants).

Second District   No. 86—0356

Opinion filed February 9, 1987.

Joseph L. Polito, of Loves Park, for appellant.

Richard R. Haldeman, of Williams & McCarthy, P.C., of Rockford, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

The defendant, Jeffrey Woodard, appeals from the trial court's order which reversed the Illinois Human Rights Commission's finding of racial discrimination. No questions are raised on the pleadings. Defendant's sole issue on appeal is whether the trial court's decision is contrary to the manifest weight of the evidence. We affirm the trial court.

Defendant, who is black, filed a discrimination charge with the Illinois Department of Human Rights and Equal Employment Opportunity Commission alleging that his former employer, Pioneer Life In-

surance Company of Illinois (Pioneer), terminated him on the basis of his race. The Illinois Department of Human Rights filed its complaint with the Human Rights Commission (Commission). A public hearing was convened for this matter before an administrative law judge (ALJ) for the Commission. The pertinent facts follow.

Defendant was hired by Pioneer on a part-time basis on July 13, 1981, as a file clerk in the mailroom. He was promoted to a full-time day shift position approximately one month later. After two months, on October 12, 1981, defendant was assigned to be trained for the position of new claims setup.

Karen Parks and Julie Larson, who were promoted to full-time positions around the same time as defendant, were trained on new claims setup by a person who was to be promoted from that station, as is customarily done. Consistent with this custom, Debra Nalewanski, defendant's supervisor, assigned Ms. Parks to train defendant in the position. She trained defendant for approximately three days. Ms. Parks approached the supervisor, Ms. Nalewanski, and informed her that there were problems with regard to defendant's training. She felt that defendant was not concentrating and was not getting the job done.

Pursuant to these representations, Ms. Nalewanski met with defendant and Ms. Parks. Within 24 hours, Ms. Parks again spoke to Ms. Nalewanski about the same problems and that she could not continue her training. As a result, Ms. Nalewanski removed Ms. Parks from the assignment and asked Ms. Larson to train defendant. After spending two or three days training with defendant, Ms. Larson also experienced problems with him. Ms. Nalewanski then placed defendant on probation as a result of these problems on October 20, 1982, for a two-week period. She continued to train defendant herself.

Defendant claimed that Ms. Parks had a negative attitude toward training him, she refused to train defendant, and slammed the files down on the desk. Defendant also testified that Ms. Larson made negative remarks toward defendant, calling him "boy." Defendant sent a letter to Mr. Ron LaPorta, the department manager, as a result of being placed on probation, requesting that he be allowed to meet with him. The letter was sent without Ms. Nalewanski's knowledge as defendant's immediate supervisor.

On October 26, 1981, defendant was called into Mr. LaPorta's office. Defendant was cautioned against circumventing the chain of command, complaining to Mr. LaPorta instead of Ms. Nalewanski. Defendant was also reminded that he had to be at his work station at 8 a.m. Defendant was fired at this meeting.

Defendant denied that Ms. Nalewanski was present, although Ms. Nalewanski testified otherwise. Defendant denied any knowledge of the company's chain-of-command policy. He also denied that he was warned to stop raising his voice or he would be terminated for insubordination. The hearing judge found that defendant became upset and raised his voice after he was terminated. Pioneer maintained otherwise.

The ALJ found that defendant established a *prima facie* case because he set forth evidence which raised an inference of discrimination. The ALJ focused her decision on testimony given by Genevieve Zimmerman. She was, according to the ALJ's recommended order and decision, not only defendant's co-worker but also his "live-in" girlfriend. She is white. The ALJ stated that "[s]hortly before [defendant's] termination by Mr. LaPorta, Ms. Zimmerman was questioned as to her relationship with [defendant] by Mr. LaPorta." She related that defendant was her boyfriend. Before this, Mr. LaPorta and Ms. Zimmerman had a "very good relationship." Although not his secretary, Ms. Zimmerman was "often" requested to do work for him. He "would at times invite" Ms. Zimmerman to have lunch with him. "Generally, Ms. Zimmerman and Mr. LaPorta had been on very friendly terms." After the inquiry as to her relationship with defendant, the "relationship" between Ms. Zimmerman and Mr. LaPorta "changed radically." Mr. LaPorta "ceased to give" his work to Ms. Zimmerman and gave all his work to a different secretary. He stopped "inviting Ms. Zimmerman to go to lunch, and stopped having even casual conversations with Ms. Zimmerman." Then "[s]trange things began to happen to Ms. Zimmerman" after the inquiry. Her new IBM Selectric Typewriter was replaced by an old electric typewriter that did not work. The ALJ also found:

> "Shortly after the inquiry regarding the relationship between Ms. Zimmerman and [defendant], the [defendant] was terminated by Mr. LaPorta for the stated reason of insubordination. This occurred notwithstanding the fact that Ms. Nalewanski was [defendant's] immediate supervisor and in fact should have been responsible for the discipline administered to [defendant].

> Because such facts if otherwise unexplained raise an inference of discrimination, [Pioneer] is required to articulate legitimate nondiscriminatory reasons for the actions it has taken with respect to the complaint.
>
>          \*\*\*
>
> Given the above, it appears that the reason given by Mr. LaPorta for scheduling the meeting was contrived. It appears that

Mr. LaPorta wished to place [defendant] in a position where his termination could be accomplished. [Defendant] was credible when he testified that he only became agitated and loud after he had been terminated because he wanted to know the reason for his termination. The Administrative Law Judge deems that given Mr. LaPorta's former attitude with regard to the [defendant] and his relationship with Ms. Zimmerman, given the fact that the [defendant] prior to the time that this was discovered had been promoted twice in a very relatively short time which is evidence of the fact that he was a good worker, and given the fact that he only experienced difficulty at work after his relationship with Ms. Zimmerman became known, the Administrative Law Judge deems that [defendant] was terminated for no other reason than the fact that he was a black male dating a white female."

The ALJ further found that although the record was replete with testimony regarding defendant's inability to perform his new job, the reasons for which defendant was fired was not poor performance. Defendant was discharged because of insubordination. Therefore, the poor performance did not play a role with the discipline that defendant ultimately received.

Pioneer filed a request for review, a request to present additional evidence and a motion for rehearing, with attached affidavits. In its request, Pioneer pointed out that none of the contested material issues of fact agreed to by the parties identified the relationship between Mr. LaPorta and Ms. Zimmerman as a relevant or material issue, yet the ALJ made numerous findings and inferences, stated and unstated, concerning the relationship between Mr. LaPorta and Ms. Zimmerman to support a conclusion of racial discrimination against defendant, not Ms. Zimmerman. Pioneer argued that minimal standards of due process required adequate notice of the nature of the charges and contested issues in order to obtain and present evidence in support of its defense. Pioneer also complained that the ALJ used an impermissible standard of law in adopting these inferences of fact which were totally unsupported by the record.

Pioneer asked that additional evidence be taken to show, without doubt, that Mr. LaPorta began working for Pioneer on June 8, 1981, not August or September; that Mr. LaPorta began to use Marie Werst Olson, his administrative assistant, to perform his secretarial chores after July 14, 1981, well before defendant was even hired; and that the legal department was solely responsible for the decision to take the IBM Selectric from Ms. Zimmerman, not Mr. LaPorta, as in-

ferred.

The Commission refused all relief and adopted, *in toto*, the order of the ALJ. On March 29, 1985, Pioneer appealed to the circuit court praying for reversal of the decision of the Commission, or in the alternative, for remand for the taking of additional evidence.

On March 31, 1986, the court entered its order reversing the decision of the Commission based upon: (1) defendant's failure to prove that he was qualified for the job he was performing; that similarly situated white employees were treated separately from defendant under similar circumstances and that he was replaced by a white employee; (2) the inferences of fact to support the holding of the Commission were based on imagination, speculation, and conjecture and cannot stand as a matter of law; and (3) the decision of the Commission was and is against the manifest weight of the evidence. In light of this ruling, the trial court did not decide whether additional evidence should have been allowed on remand.

Defendant appeals from the trial court's decision. The Commission and its commissioners are not parties to this appeal.

It is defendant's theory that the findings and conclusions of the Commission on questions of fact shall be held to be *prima facie* true and correct; the reviewing court cannot reweigh the evidence or assess the credibility of the witnesses; and the scope of review in administrative cases is only limited to whether the finding of the agency is contrary to the manifest weight of the evidence.

■■ Judicial review of a Commission's order is obtained in accordance with the Administrative Review Law (Ill. Rev. Stat. 1985, ch. 110, par. 3—110). The scope of review is limited to an examination, without the privilege of receiving any new or additional evidence in support of or in opposition to any finding or decision of the agency, of all questions of both law and fact presented by the record before it from any final decision of an administrative agency. In arriving at a determination with respect to the correctness of the action taken by the agency, "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." (Ill. Rev. Stat. 1983, ch. 110, par. 3—110.) Thus, a reviewing court is not to reweigh the evidence or make an independent determination of the facts. Courts may not interfere with the discretionary authority vested in administrative bodies unless the authority is exercised in an arbitrary or capricious manner or the decision is against the manifest weight of the evidence. *Murdy v. Edgar* (1984), 103 Ill. 2d 384, 391.

Pioneer argues that if a reviewing court finds that the administra-

tive agency misapplied the law, it cannot let that decision stand. In this case, Pioneer contends the circuit court correctly determined that the Commission's decision was not only contrary to the manifest weight of the evidence but made speculative findings by misapplying rules of law.

Pioneer first relies on the test enumerated in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817. It believes that the Commission did not properly apply this test because an employee must show *each* element in order to establish a *prima facie* case of racial discrimination. Pioneer contends that defendant proved only two of the necessary elements. Defendant posits that the test is not exclusive but is only one manner in which an employee may meet his initial burden of proof.

■ The Illinois Human Rights Act (Ill. Rev. Stat. 1983, ch. 68, par. 1–101 *et seq.*) is similar to title VII of the Civil Rights Act of 1964 (42 U.S.C. sec. 2000a *et seq.* (1976)), and Illinois courts have routinely consulted and relied upon Federal law when determining whether discrimination violates Illinois law. (See, *e.g., Freeman United Coal Mining Co. v. Fair Employment Practices Com.* (1983), 113 Ill. App. 3d 19, 22.) Both statutes prohibit employment discrimination on the basis of race. Under Title VII, a claim of employment discrimination can be brought under either the "disparate treatment" theory (*McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817), or under the "disparate impact" theory (*Griggs v. Duke Power Co.* (1971), 401 U.S. 424, 28 L. Ed. 2d 158, 91 S. Ct. 849). In this case, the Commission found discrimination to have been proved under the disparate treatment theory.

Disparate treatment means the employer treats some people less favorably than others because of their race. (*International Brotherhood of Teamsters v. United States* (1977), 431 U.S. 324, 335 n.15, 52 L. Ed. 2d 396, 415 n.15, 97 S. Ct. 1843, 1854 n.15.) To meet this burden of persuasion, the Supreme Court developed a procedure frequently used to prove discrimination in disparate treatment actions.

■ The burden-of-proof analysis created by the court in *McDonnell Douglas* requires first that the employee establish a *prima facie* case of illegal discrimination. The elements of a *prima facie* case, as set forth in *McDonnell Douglas*, have been adopted and broadly applied to a variety of employment decisions, including termination. A claimant could make out a *prima facie* claim where he proves by a preponderance of the evidence that: (1) the employee is a member of a racial minority; (2) the employee was qualified for the job he was performing; (3) the employee was satisfying the normal requirements in

his or her work; (4) the employee was discharged; and (5) after the employee's discharge the employer assigned white employees to perform the same work. *Flowers v. Crouch-Walker Corp.* (7th Cir. 1977), 552 F.2d 1277, 1282; see also *Valley Mould & Iron Co. v. Illinois Human Rights Com.* (1985), 133 Ill. App. 3d 273, 280-81.

No court has stated that each element must be proved to establish a *prima facie* case. "This, of course, was not intended to be an inflexible rule *** '[t]he facts necessarily will vary *** and the specification *** of the prima facie proof required *** is not necessarily applicable in every respect to differing factual situations.' " *Furnco Construction Corp. v. Waters* (1978), 438 U.S. 567, 575-76, 57 L. Ed. 2d 957, 966, 98 S. Ct. 2943, 2949, quoting *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802 n.13, 36 L. Ed. 2d 668, 677-78 n.13, 93 S. Ct. 1817, 1824 n.13.

■ Once the employee establishes a *prima facie* case, it creates a rebuttable presumption that the employer unlawfully discriminated against the employee. (*Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089.) The employer then has the burden to "articulate some legitimate, nondiscriminatory reason" for the alleged discriminatory action. (*Furnco Construction Corp. v. Waters* (1978), 438 U.S. 567, 578, 57 L. Ed. 2d 957, 968, 98 S. Ct. 2943, 2950.) The employee's *prima facie* case stands, and judgment must be entered as a matter of law if the employer fails to meet this burden. (*Texas Departmen⁺ of Community Affairs v. Burdine* (1981), 450 U.S. 248, 254, 67 L.Ed. 207, 215-16, 101 S. Ct. 1089, 1094.) If, however, the employer does articulate his burden, the presumption created by the *prima facie* showing drops from the case, and the factual inquiry proceeds to a new level of specificity. (*United States Postal Service Board of Governors v. Aikens* (1983), 460 U.S. 711, 715, 75 L. Ed. 2d 403, 410, 103 S. Ct. 1478, 1482.) The employee must have an adequate opportunity to demonstrate that the proffered reason was not the true reason for the employment decision to discharge, but rather a pretext. *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 256, 67 L. Ed. 2d 207, 217, 101 S. Ct. 1089, 1095.

Apparently, the Commission followed the reasoning in *Furnco* that the method suggested for pursuing a racial-discrimination inquiry was never intended to be rigid, mechanized, or ritualistic as Pioneer argues. The ALJ determined, citing *Furnco*, that the basic requirement in establishing a *prima facie* case of racial discrimination is that the complaint must set forth facts which if otherwise unexplained raise an inference of discrimination. *Furnco* found that a *prima facie* case "raises

an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors. [Citation.] ***. Thus, when all legitimate reasons for rejecting an [employee] have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we generally assume acts only with *some* reason, based his decision on an impermissible consideration such as race." (Emphasis in original.) *Furnco Construction Corp. v. Waters* (1978), 438 U.S. 567, 577, 57 L. Ed. 2d 957, 967, 98 S. Ct. 2943, 2949-50.

Pioneer posits that the Commission's "reasonable inferences" of finding a *prima facie* case were based on imagination, speculation, and conjecture and, therefore, cannot stand. We agree.

The Commission largely based its decision that defendant had established his *prima facie* case on its "reasonable inference" that LaPorta fired defendant because he was upset with defendant's romantic involvement with Ms. Zimmerman. Based on the record, there is no evidence to support such an inference. The only evidence of a relationship between LaPorta and Ms. Zimmerman is contained in the following testimony by Ms. Zimmerman:

"Q. What was your position—your relationship with Mr. LaPorta shortly after he began working for Pioneer Life?

A. We had a nice good professional relationship. We went to lunch.

Q. Did there come a time when this relationship changed?

A. Yes.

Q. Approximately when?

A. Approximately a month after he came there.

Q. How did the relationship change?

A. We had no conversation, we had no contact. He sought a secretary to do his work instead of me.

Q. Did you and Mr. LaPorta ever discuss this change?

A. No."

Ms. Zimmerman also testified that she held simultaneous positions as secretary for Mr. Keller and Mr. LaPorta in the first month of Mr. LaPorta's employment with Pioneer. Ms. Zimmerman did not testify that Mr. LaPorta took her typewriter. The record shows that her typewriter was replaced after October 26, 1981. She continued to work at Pioneer until February 1982 when she voluntarily left for California with defendant.

■ To search the record to ascertain whether the inferences drawn by the Commission are reasonable is not to reweigh the evidence or make an independent determination of the facts but to ascer-

tain whether the Commission's findings are contrary to the manifest weight of the evidence. If an administrative agency's findings lack evidentiary support in the record, the court must set them aside. (See *Kerr v. Police Board* (1974), 59 Ill. 2d 140, 142; *Batley v. Kendall County Sheriff's Department Merit Com.* (1981), 99 Ill. App. 3d 622, 627.) In this case, it is apparent that the Commission came to an arbitrary and capricious inference based on a lack of evidence and, therefore, its decision that defendant maintained a *prima facie* case is against the manifest weight of the evidence.

Deference is unquestionably due to the factual determinations of an agency charged with the primary responsibility for adjudication in a specialized area. (*Motorola, Inc. v. Fair Employment Practices Com.* (1966), 34 Ill. 2d 266, 274.) However, while a suspicion might reasonably remain that a discriminatory action had been committed, a mere suspicion cannot be elevated to the status of a preponderance of the evidence, as required by the statute. 34 Ill. 2d 266, 282.

■ Defendant argues that the reason articulated by Pioneer for dismissing defendant was properly found to be pretextual rather than legitimate. He bases this belief on the fact that defendant was fired for insubordination which stemmed from the alleged verbal abuse toward Mr. LaPorta. Because defendant did not become verbally abusive until after he was fired, contrary to Ms. Nalewanski's testimony, the reason of termination for insubordination was therefore pretextual. Further, defendant opines that since this court cannot reweigh the evidence or assess the credibility of the witnesses, the decision of the Commission was correct. *Broadway v. Secretary of State* (1985), 130 Ill. App. 3d 448, 452.

Unlike findings of fact, a legal determination of discrimination is not presumptively established by the Commission's order. (*General Electric Co. v. Fair Employment Practices Com.* (1976), 38 Ill. App. 3d 967, 979.) Here, where the Commission's inference was based on a lack of evidence, defendant has not established a *prima facie* case of discrimination. Moreover, even if left with the Commission's inference that defendant's termination was pretextual because he was fired for insubordination which was totally unrelated to his probation, good cause for discharge is not an issue under the Human Rights Act. (See generally *General Electric Co. v. Fair Employment Practices Com.* (1976), 38 Ill. App. 3d 967.) As Pioneer argues, there must be some inference in the first instance that the termination was racially motivated.

Our review of the record persuades us that the Illinois Human Rights Commission's finding of racial discrimination was against the

manifest weight of the evidence. Accordingly, we affirm the judgment of the circuit court.

Affirmed.

LINDBERG, P.J., and WOODWARD, J., concur.