ST. MARY OF NAZARETH HOSPITAL CENTER, Petitioner-Appellant, v.
JOHN A. CURTIS *et al.*, Respondents-Appellees.

First District (4th Division)   No. 87—0623

Opinion filed November 19, 1987.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (James E.
McParland and Thomas H. Luetkemeyer, of counsel), for petitioner-appel-
lant.

Neil F. Hartigan, Attorney General, of Springfield (Jill A. Deutsch, Assistant Attorney General, of counsel), for respondent-appellee Human Rights Commission.

Robert S. Harlib, of Chicago, for respondent-appellee John A. Curtis.

JUSTICE JIGANTI delivered the opinion of the court:

The respondent, John A. Curtis, filed a complaint with the Human Rights Commission (Commission) alleging that the petitioner, St. Mary of Nazareth Hospital Center (Hospital), discharged him because of his race. Following a hearing, an administrative law judge determined that Curtis had not been discriminated against on the basis of race and recommended to the Commission that the complaint be dismissed. A three-member panel of the Commission reviewed the determination of the administrative law judge and, with one member dissenting, reversed the determination as being against the manifest weight of the evidence. A petition for rehearing before the full Commission was denied, and the Hospital has appealed directly to this court. 107 Ill. 2d R. 335.

Curtis, a black man, was employed by the Hospital for over six years before he was discharged on February 25, 1982. Since July of 1979, he had been the coordinator of the "Special Procedures Department in Vascular Radiology, Cardiac Catheterization and Open-Heart Perfusion." Curtis had both an administrative supervisor, Irene Allman, and a medical supervisor, Dr. Dino Tatooles. Hospital policy provided that an employee was allowed to accrue only three weeks of vacation time. However, Curtis had accrued seven weeks of unused vacation time. In November and December of 1981, Allman and Curtis had discussed the unused vacation time and Curtis was encouraged to take vacation in order to comply with Hospital policy. Curtis testified that in the latter part of December 1981 he orally agreed with Allman that he would take a vacation from Monday, February 15, 1982, until Monday, March 8, 1982. Although he had agreed with Allman on the subject, he had not agreed with Dr. Tatooles. Curtis' written request for the vacation was dated Tuesday, February 9, 1982.

Allman testified that on Wednesday, February 10, 1982, she received a correspondence from Curtis which stated that he was taking a three-week vacation starting Monday, February 15. Allman stated that prior to the receipt of this memorandum, she had no knowledge that Curtis was going to take a three-week vacation. She testified that she had agreed to only one week and that a vacation request had

to be in writing and approved by the immediate supervisor. A similar vacation request was written by Curtis to Dr. Tatooles on February 9, stating that Curtis' vacation would begin on February 15 and that he would be returning on March 8. Curtis testified that Dr. Tatooles verbally responded that he agreed to those dates. Dr. Tatooles did not testify at the hearing. Allman testified that on Thursday, February 11, she delivered a letter to Curtis, which was introduced in evidence, stating that she verbally agreed with Curtis on Monday, February 8, that he could take no more than one week of vacation at that time. The letter stated that because of critical staffing shortages, she could in no way honor a request for a three-week vacation. Curtis testified that he received the letter in a sealed envelope on Friday, February 12, at approximately 3:21 p.m., nine minutes before he was scheduled to go off duty. Curtis testified that upon reading the contents of the letter, he immediately tried to contact Allman by telephone. When Allman's secretary said Allman was not available, Curtis told the secretary that it was imperative that he speak to Allman. Despite this, Allman did not contact him and he left for his vacation without speaking to her. Curtis stated that he made another attempt to contact Allman at 7 a.m. on Monday, February 15, the first day of his vacation. He was again informed that she was unavailable. Curtis left a message stating it was very important that he get in touch with her at her earliest convenience, but his call was not returned. Curtis made another unsuccessful attempt to reach Allman on the following day. Finally, he tried to contact Allman at her home but could not reach her and left another message for her to call him. The call was not returned. Allman's testimony on this point completely contradicted that of Curtis. She stated that she met with Curtis in her office at 1 p.m. on Friday, February 12, and that she and Curtis agreed that he would take only one week of vacation. Allman stated that the meeting was amiable and that she wished Curtis well on his vacation.

Curtis testified that on the third day of his vacation, after several unsuccessful attempts to contact Allman, he spoke to Dr. Tatooles, who told him that there was no reason for him to shorten his vacation to one week and offered to intercede with Allman. Dr. Tatooles further told Curtis that if Curtis did not hear from him, he was to assume that the original plan to take a three-week vacation had been approved. Dr. Tatooles did not contact Curtis again. Curtis made similar contact with William Wedral, vice-president of operations, with the same result. Curtis returned to work on Monday, March 8, and was told that he had been discharged in accordance with Hospital policy. The record shows that he was replaced by a white employee. Neither

Dr. Tatooles nor Wedral testified at the hearing.

Section 2—102(A) of the Illinois Human Rights Act provides as follows:

> "It is a civil rights violation:
>
> (A) Employers. For any employer to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, *discharge*, discipline, tenure or terms, privileges or conditions of employment *on the basis of unlawful discrimination*." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 68, par. 2—102(A).

■■ In analyzing employment discrimination actions under the Human Rights Act, Illinois courts have adopted the three-part analysis set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817. (See *Oak Lawn v. Illinois Human Rights Comm'n* (1985), 133 Ill. App. 3d 221, 478 N.E.2d 1115.) First, the plaintiff must prove by a preponderance of the evidence a *prima facie* case of unlawful discrimination. If a *prima facie* case is established, the plaintiff creates a rebuttable presumption that the employer unlawfully discriminated against him. Second, to rebut the presumption, the employer must clearly articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the employer carries that burden of production, the presumption of unlawful discrimination falls and the plaintiff must then prove by a preponderance of the evidence that the legitimate reason offered by the employer was not its true reason, but was instead a pretext for unlawful discrimination. This merges with the plaintiff's ultimate burden of proving that the employer unlawfully discriminated against him. (*Oak Lawn v. Illinois Human Rights Comm'n* (1985), 133 Ill. App. 3d 221, 223-24, 478 N.E.2d 1115.) Central to this analysis is the concept that the ultimate burden of proving unlawful discrimination remains at all times with the plaintiff. *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 257, 67 L. Ed. 2d 207, 218, 101 S. Ct. 1089, 1095.

■ The Hospital does not dispute the fact that Curtis met his burden of proving a *prima facie* case of discrimination. The elements of a *prima facie* case have been stated as follows: (1) that the plaintiff was a member of a racial minority; (2) that he was qualified for the job he was performing; (3) that he was satisfying the normal requirements of his work; (4) that he was discharged; and (5) that after his discharge the employer assigned a white employee to perform the same work. (*Flowers v. Crouch-Walker Corp.* (7th Cir. 1977), 552 F.2d 1277, 1282.) The issues which must be addressed, then, are whether

the Hospital has articulated a legitimate nondiscriminatory reason for its decision to discharge Curtis and, if so, whether Curtis has shown by a preponderance of the evidence that the articulated reason was not the true one but was instead a pretext for racial discrimination.

With regard to these issues, the administrative law judge found that the Hospital met its burden of rebutting Curtis' *prima facie* case by stating that he was discharged for failing to contact his supervisor within three days of an unauthorized absence, which led the Hospital to conclude that he had abandoned the job. The administrative law judge then found that Curtis had failed to prove by a preponderance of the evidence that the articulated reason was a pretext for what was in reality a racially motivated decision. In making this finding, the administrative law judge stated that the only persons who could verify that the discharge was a pretext and not the result of a mistake were Allman's supervisor or Curtis' medical supervisor, Dr. Tatooles, neither of whom was produced at the hearing. After a discussion of the evidence presented, the administrative law judge concluded that "[w]hat happened to [Curtis] was unfair and shortsighted of [the Hospital] but not discriminatory by a preponderance of the evidence." The Illinois Human Rights Act specifically provides that "[t]he Commission shall adopt the hearing officer's findings of fact if they are not contrary to the manifest weight of the evidence." Ill. Rev. Stat. 1985, ch. 68, par. 8—107(E)(2).

In reversing the determination of the administrative law judge, the Commission found that Allman had intentionally refused to return the calls and that the only possible conclusion was that the Hospital was not acting in good faith when it discharged Curtis. The Commission further found that "it strains credibility to believe that Allman honestly, and in good faith, believed that [Curtis] had abandoned his position. At the very least, any rational person would have returned [Curtis'] phone calls before approving a termination." However, there is nothing in the order entered by the Commission which suggests that the Hospital's stated reason for discharging Curtis was a pretext for discrimination. Rather, the Commission found that the Hospital's explanation was incredible and that it did not have good cause to discharge Curtis.

As we stated earlier, once a *prima facie* case of discrimination is made, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the discharge. It has been stated that all the employer has to do in this regard is raise a question of fact as to the asserted reason for the discharge. (B. Schlei & P. Grossman, Employment Discrimination Law ch. 36, at 151 n.6 (2d ed.

Supp. 1983).) We believe that the administrative law judge correctly determined that this was done in the case at bar. It then became incumbent upon Curtis to produce competent evidence showing that the articulated reason for his discharge was not the real one, but was merely a pretext for a racially motivated decision. (*McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817.) The point which Curtis seems to miss is that "[s]howing that the employer dissembled is not necessarily the same as showing 'pretext *for discrimination*.'" (Emphasis in original.) (*Pollard v. Rea Magnet Wire Co.* (7th Cir. 1987), 824 F.2d 557, 559.) The employer may feel compelled to state what it considers an "acceptable" explanation to hide a less seemly, but nondiscriminatory, motivation for the discharge. The Human Rights Act does not compel an employer to have a good reason for its employment decisions; it merely prohibits decisions motivated by unlawful discrimination. (Ill. Rev. Stat. 1985, ch. 68, par. 2—102(A).) While the fact that the employer has given a false reason for the discharge is strong evidence of discriminatory intent, it is not dispositive of the issue. (*Benzies v. Illinois Department of Mental Health & Developmental Disabilities* (7th Cir. 1987), 810 F.2d 146, *cert. denied* (1987), ___ U.S. ___, 97 L. Ed. 2d 737, 107 S. Ct. 3231.) Several courts have stressed that the plaintiff "must show not only a false reason but also a causal chain in which race or another forbidden criterion plays a dispositive role." (*Pollard v. Rea Magnet Wire Co.* (7th Cir. 1987), 824 F.2d 557, 559; see also *Maguire v. Marquette University, Department of Public Instruction* (7th Cir. 1987), 814 F.2d 1213, 1216-18; *Sherkow v. State of Wisconsin* (7th Cir. 1980), 630 F.2d 498, 502.) Discriminatory intent need not be proved by direct evidence, and it is usually shown by resort to statistics or comparable cases. (*Pollard*, 824 F.2d 557.) In our view, Curtis failed to meet his ultimate burden of showing that he was the victim of unlawful discrimination.

In summary, we conclude that while Curtis has proved a *prima facie* case, the Hospital met its burden of articulating a legitimate, nondiscriminatory reason for the discharge and Curtis did not show by a preponderance of the evidence that the Hospital's stated reason was a pretext for discrimination. The decision of the Commission is accordingly reversed.

Reversed.

McMORROW, P.J., and LINN, J., concur.