FAITH WHITAKER, Petitioner-Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents-Appellees.

First District (4th Division)   No. 1—88—1804

Opinion filed April 13, 1989.—Rehearing denied June 28, 1989.

Arvey, Hodes, Costello & Burman, of Chicago (Rosemarie J. Guadnolo and Joseph J. Hahn, of counsel), for petitioner.

Neil F. Hartigan, Attorney General, of Springfield, and Siegan, Barbakoff & Gomberg, of Chicago (Robert J. Ruiz, Solicitor General, and Deborah L. Ahlstrand, Assistant Attorney General, of Chicago, and Norman P. Jeddeloh, of counsel), for respondents.

JUSTICE LINN delivered the opinion of the court:

Petitioner, Faith Whitaker, filed a charge with the Illinois Department of Human Rights challenging her termination from employment with the University of Illinois (the University). Following a hearing, the administrative law judge (ALJ) recommended dismissal of the complaint on the grounds that it was not timely filed. The Human Rights Commission (Commission) adopted the ALJ's recommendations and dismissed the complaint. Subsequently, the Commission denied Whitaker's request for rehearing before the full Commission. Whitaker then filed the pending petition for review with this court.

Whitaker challenges the dismissal on several grounds. She asserts that the Commission erred in finding the 180-day filing requirement to be jurisdictional. She urges this court to construe the requirement as a statute of limitations subject to a discovery rule and other equitable tolling doctrines. In addition, Whitaker contends that the ALJ's conclusions of law are inconsistent with her findings of fact and therefore are arbitrary and against the manifest weight of the evidence.

We affirm the decision of the Human Rights Commission.

BACKGROUND

Faith Whitaker, a black woman, began working for the University of Illinois in Chicago in 1976, starting as a clerk typist II. In the next few years she received promotions and favorable work evaluations.

In 1980 Faith Whitaker was again promoted, this time to a position titled "Housing Administrator II." She worked at the University's student housing office, assigning students to rooms, supervising the clerical staff in the housing office, establishing procedures and advising students regarding matters handled by the housing office. Her duties were 50% administrative and 50% clerical.

In July 1982 William Schnackel became the University's director of housing and Whitaker's supervisor. In September of that year Schnackel hired Jo Ann Campbell as resident director. Campbell is white. Whitaker trained Campbell to perform most of the duties that she had been performing. Campbell was additionally responsible for all aspects of residents' lives in the women's residence hall and student residence hall. In the fall of 1982, Schnackel reassigned the duty of making room assignments from Whitaker to Campbell. In April 1983 Schnackel reassigned the remainder of Whitaker's administrative duties to Campbell and directed Whitaker to perform clerical functions.

In early 1983 Whitaker responded to a confidential questionnaire, stating that she was dissatisfied with the general climate of racism in the housing office and also expressing dissatisfaction with the reduction of her administrative duties.

On June 23, 1983, Schnackel told Whitaker that she was to be laid off in 30 days because of budgetary problems and because her position was no longer "appropriate." Whitaker could find no comparable job opportunities at the University's personnel office. Accordingly, Whitaker submitted her letter of involuntary resignation on June 29, 1983.

On July 19, 1983, Campbell was named area director of the housing office. With that position she was given responsibility for the single student residence hall, a hall previously managed by a person who had served as a part-time housing administrator II.

In July 1983 Whitaker described her termination to the Chicago office of the Equal Employment Opportunity Commission (EEOC). An intake clerk told her that the University acted within its rights in phasing out her position and that the computer would not accept her complaint.

In September 1983 Whitaker learned from former coworkers that Campbell had been named area director on July 19, 1983. In January 1984, Whitaker learned that Campbell's title had been changed again, to area coordinator.

According to Schnackel, even before he came to the University he had determined that a live-in professional staffer, titled "Resident Director," would be necessary to improve the living situation in the residence halls. He was looking for certain qualifications, such as a degree

and education in counseling, student personnel or business administration. Schnackel stated that the change in staffing was part of his reorganization of the housing office.

Neither the ALJ nor the Commission reached the merits of Whitaker's discrimination charge because they believed that the charge was not timely filed under the 180-day filing provision of the Human Rights Act. (Ill. Rev. Stat. 1983, ch. 68, par. 7—102(A)(1).) Under this provision, "[w]ithin 180 days after the date that a civil rights violation allegedly has been committed, a charge in writing under oath or affirmation may be filed with the [Illinois Department of Human Rights] by an aggrieved party or issued by the Department itself under the signature of the Director." Ill. Rev. Stat. 1983, ch. 68, par. 7—102(A(1).

OPINION

I

A

Whitaker involuntarily resigned on June 23, 1983, but did not file her charge with the Department until February 16, 1984, nearly eight months later. If the 180-day period is read as an absolute deadline Whitaker's filing is obviously untimely. Even if the 180-day period is subject to a discovery rule, estoppel, or other equitable doctrine, the record must contain sufficient supporting facts to toll the filing period.

Under existing Illinois law, the 180-day period in section 7—102(A)(1) has been deemed to be jurisdictional, which means that filing within 180 days after the date of the alleged discrimination is a prerequisite for maintaining suit. (*Pickering v. Human Rights Comm'n* (1986), 146 Ill. App. 3d 340, 496 N.E.2d 746; *cf. Gonzalez v. Human Rights Comm'n* (1989), 179 Ill. App. 3d 362, 369 n.2.) If the section were construed as a statute of limitations instead of a jurisdictional prerequisite, equitable tolling, waiver, and estoppel would be available under appropriate circumstances to excuse or extend the filing time period. (*Gonzalez* (1989), 179 Ill. App. 3d 362; *Zipes v. Trans World Airlines, Inc.* (1982), 455 U.S. 385, 393, 71 L. Ed. 2d 234, 243, 102 S. Ct. 1127, 1132.) Even under the *Pickering* rationale, which holds the time limit to be jurisdictional, a narrow exception is recognized where the agency's misleading conduct causes the claimant to miss the deadline. (See also *Lee v. Human Rights Comm'n* (1984), 126 Ill. App. 3d 666, 467 N.E.2d 943.) Hence, estoppel has been recognized as a valid exception to the 180-day requirement.

Both the ALJ and the Commission followed *Pickering* insofar as it

held the statute to be jurisdictional. Both further found that Whitaker did not present facts to sustain an estoppel exception because she had knowledge of the facts necessary to make her charge within the 180-day period and therefore was not misled by the University. Accordingly, they held that her filing was untimely and dismissed the complaint.

On appeal, Whitaker contends that *Pickering*'s statutory construction of section 7—102(A)(1) is erroneous. Nevertheless, she attempts to distinguish or harmonize the decision with her theory that she had no charge to file until she discovered all of the pertinent facts surrounding her discharge. Whitaker contends that she "faced the paradoxical requirement" in section 7—102 of filing a sufficiently detailed charge (because she lacked certain information at the time of discharge) and at the same time meeting the 180-day period. She asserts that she could not, as required by section 7—102(A)(2), "apprise any party properly concerned as to the time, place and facts surrounding the alleged civil rights violation" unless she first had knowledge of these facts. She claims that she was unaware of the full facts until September 1983 or later. Accordingly, she timely filed her charge within 180 days from her discovery of the pertinent facts.

Although discovery rules have been applied to statutes of limitation, we need not debate the merits of such a rule because we believe that Whitaker has failed to establish that there were any material facts of which she lacked knowledge at the time of her discharge. Indeed, the transfer of her duties to Campbell had been completed before Whitaker left the University. Moreover, the pleading requirement of the Act is quite liberal in that the Department rules and regulations allow amendments to "clarify or amplify allegations made therein" and such amendments "relate back to the original filing date." (*Gonzalez v. Human Rights Comm'n* (1989), 179 Ill. App. 3d 362, 370.) Hence, if she had pleaded the facts as she knew them upon her discharge and timely filed a charge, she could have later amended it to add those facts that she felt amplified her claim.

■ In the pending case, to establish the four elements of a *prima facie* case of discrimination Whitaker would have to prove that she is a member of a minority group; had been performing her job satisfactorily; was terminated; and was replaced by a white person. (See *Pioneer Life Insurance Co. v. Woodard* (1987), 152 Ill. App. 3d 236, 242-43, 504 N.E.2d 230, 235.) Whitaker admits that she could have stated the first three elements but argues that she lacked knowledge that she was replaced by a white person until September 1983 or January 1984.

■ We cannot agree. After the evidentiary hearing the ALJ

found, in essence, that Whitaker was on notice that Campbell was taking over substantially all of her duties before she left. The ALJ found immaterial the mere fact that Campbell was given different titles after Whitaker left because it was Campbell's *function*, not title, that determined whether and when she had replaced Whitaker.

The ALJ found that Whitaker knew that her administrative functions were being transferred to Campbell as early as the fall of 1982. Whitaker's training of Campbell and the transfer of her duties continued throughout the spring of 1983. By the time of her termination in June, all of these duties had been transferred and Whitaker's position had become superfluous.

Under these facts Whitaker cannot reasonably deny that she was aware of what was happening. Schnackel openly hired Campbell and transferred Whitaker's duties to her. Further, Whitaker had complained in the questionnaire of what she perceived to be an atmosphere of racial discrimination. We cannot speculate whether Schnackel's actions were racially discriminatory or whether, assuming Whitaker established a *prima facie* case, Schnackel could have justified his actions to defeat the assertion that the reasons for her termination were a pretext for discrimination. We do find, however, that Whitaker had all of the material facts relating to her claim by the time she was discharged. In fact, the ALJ found that "the crux of [her] case, as presented at hearing, was that she was a good employee who was not given an opportunity by a new administrator, Mr. Schnackel, before being replaced by a white employee, Ms. Campbell."

The Commission adopted the ALJ's factual findings as not being against the manifest weight of the evidence. Additionally, the Commission considered her legal arguments to the effect that *Pickering* misconstrued the law and that Federal court decisions give a more liberal interpretation to the analogous filing provisions under the EEOC. Significantly, the Commission noted that "in light of the factual findings of the [ALJ], [Whitaker's] case would have to be dismissed even if the more liberal standards of the federal law were applied." The Commission further agreed with the ALJ that Whitaker failed to come within *Pickering*'s estoppel exception to the 180-day jurisdictional deadline.

We have reviewed the record, including the lengthy legal arguments presented by the parties. We find ample support for the ALJ's findings and conclusions and agree with the Commission that they are not against the manifest weight of the evidence.

### B

Because most of the legal argument concerning *Pickering*'s inter-

pretation of section 7—102(A)(1) is collateral to the issue before us, we decline to rule that the filing period is either jurisdictional or a statute of limitations. (See *Gonzalez v. Human Rights Comm'n* (1989), 179 Ill. App. 3d 362.) Our decision in the pending case does not mean that a discovery rule or other equitable doctrine could *never* be applied to toll the 180-day period of the Act. We simply find no basis in this case to apply such a doctrine.

## II

■ Whitaker also contends that the ALJ's findings were inconsistent with her legal conclusions and therefore were arbitrary. Whitaker states that three findings of the ALJ conflict with one another: (1) that Whitaker had trained Campbell over a period of months before Whitaker's discharge; (2) that one month after her termination she attempted to file a charge with the EEOC but was told that she had no claim; and (3) that Schnackel told Whitaker that she was fired due to budgetary constraints. Whitaker asserts that if she had had sufficient facts to file a proper charge with the EEOC she would have disclosed these facts and, presumably, the EEOC would then have accepted her charge.

It is unclear how these findings of the ALJ are inconsistent or conflicting. Moreover, we find no particular significance in the fact that Whitaker unsuccessfully attempted to file a charge with the EEOC shortly after her termination. The crux of her charge then—that her duties were transferred to a white woman—could not have been significantly different from the charge she attempted to assert after the 180-day filing period under the Illinois Act. Her argument that she was not actually "replaced" until after she was terminated is strained, at best.

We conclude that Whitaker received a full evidentiary hearing on the question of whether she had sufficient facts at her disposal to file a timely charge with the Illinois Department of Human Rights. Under the facts presented, Whitaker's complaint was properly dismissed because of her unexcused failure to file her charge within the statutory time limit. Accordingly, we affirm the order of the Commission.

Affirmed.

JOHNSON and McMORROW, JJ., concur.