ISS INTERNATIONAL SERVICE SYSTEM, INC., Appellant, v. THE HUMAN RIGHTS COMMISSION *et al.*, Appellees.

First District (3rd Division)    Nos. 1—92—2641, 1—92—3759 cons.

Opinion filed May 24, 1995.—Rehearing denied June 30, 1995.

Marcia Goodman, Angela K. Dorn, and Intra L. Krumins, all of Mayer, Brown & Platt, and Allen R. Slutsky, both of Chicago, for petitioner.

L. Steven Platt and Steven F. McDowell, both of Arnold & Kadjan, of Chicago, for respondents Helena Rys and Tadeusz Palka.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and John A. Morrissey, Assistant Attorney General, of counsel), for respondent Human Rights Commission.

JUSTICE CERDA delivered the opinion of the court:

ISS International Service System, Inc. (ISS), appeals from the de-

cision by the Illinois Human Rights Commission (Commission) in favor of complainants, Helena Rys and Tadeusz Palka. ISS argues that: (1) the Commission did not have subject matter jurisdiction over Palka's retaliation claim; (2) the Commission erred in finding that Palka was discriminatorily discharged; (3) the administrative law judge (ALJ) had no basis for awarding damages to Rys for her sexual harassment claim; and (4) the Commission erred in modifying the damage awards to provide additional back pay.

Rys filed a complaint with the Illinois Department of Human Rights (Department) that alleged that Dan Lehman, an ISS manager, sexually harassed her and that she was fired from her ISS job.

Palka filed a complaint with the Department that alleged harassment based on his Polish national origin and that he was fired from his ISS job. Palka also alleged that he was asked to influence Rys to drop her sexual harassment charges and that he was retaliated against for opposing the sexual harassment.

The Department determined after investigation that there was no substantial evidence supporting Palka's charges, and the charges were dismissed. The Commission vacated the dismissal of Palka's charge of harassment based on Polish national origin. The Commission upheld the dismissal of the charge of retaliation for opposing a discriminatory practice. The Department filed a complaint alleging that ISS discriminated against Palka because of his Polish national origin and that ISS subjected Palka to harassment in violation of section 2—102(A) of the Illinois Human Rights Act (the Act) (775 ILCS Ann. 5/2—102(A) (Michie 1993)).

Palka moved the Commission for leave to file an amended complaint, which included an allegation that he was retaliated against for having reported Rys' sexual harassment to superiors and for having provided information regarding the sexual harassment to the Department.

On January 4, 1988, an ALJ granted Palka's motion to amend the complaint "with recognition" that the amended complaint was brought under the retaliation provisions of the Act.

The Commission consolidated Palka's and Rys' cases.

In a prehearing memorandum to the Commission, the following relevant facts were stipulated. ISS was a building maintenance company. Complainants were American citizens of Polish national origin. Palka had the responsibility of staffing a cleaning crew at a building in Schaumburg, Illinois. Palka reported directly to Lehman, and Lehman's supervisor was vice-president Robert E. Cosgrove. Cosgrove and Lehman had discussions about the Schaumburg contract being unprofitable due to overstaffing. Upon Cosgrove's suggestion,

Lehman ordered Palka to fire two full-time cleaners and to reduce the hours of the remaining workers. Palka refused to comply with Lehman's order. After Lehman got the union's approval for the reduction of staff and hours, Lehman repeated his order to Palka, who refused unless the order was put in writing. Lehman later gave Palka a written direction. But it was Lehman who confronted the cleaning crew with the changes.

The following was also stipulated. On October 12, 1984, the building manager informed Lehman that a security guard had reported to her that someone signed in an ISS cleaner who never arrived for work that date. Lehman went to the building and confronted Rys, who allegedly admitted to Lehman that she falsified the payroll sheet. Lehman accused Palka of complicity in the sign-in scheme, and Palka was suspended pending an investigation on October 17, 1984. Palka was fired on November 9, 1984.

The following was also stipulated. Palka's salary was $10.625 an hour, and Rys' salary was $6 an hour. Each complainant had another full-time job while working nights for ISS. Neither found a replacement for their ISS job.

Palka testified to the following at the hearing. He was a supervisor who oversaw the work of the night shift employees. He spoke to the employees about the proposed cuts, and they responded that they were not going to be able to do the job with fewer workers. He spoke to Lehman a few days later about making the cuts. Lehman warned him to follow his instructions concerning "those Polacks." Lehman instructed him to fire two people right away. Later, Lehman and Mr. Osmanski, who was a daytime supervisor, told him that they fired "those Polacks." When he asked Lehman why he was not called about the firing, Lehman responded that he was fired.

Robert Byrne, an ISS vice-president, later told Palka that Lehman had not received approval for Palka's dismissal. Palka later met with Searles, who was Byrne's assistant from Detroit. Searles was concerned over the charges filed by Rys. Searles thought if Palka spoke to Rys, then she would drop the charges. Searles said that if Palka resolved the problem with Rys, then Palka would still have a job. Searles also said that if he did not want to get involved, then Searles was going to have to fire him. He was fired.

Lehman often referred to Polish people as "Polacks." Lehman once told him to tell Polish workers, who were on break in the hallway, to move to the washrooms. In another conversation, Lehman told him to put two Mexican persons on eight-hour shifts and the "Polacks" on seven-hour shifts. Lehman stated that he did not care for those "DP's."

Rys testified to the following. On two occasions, Lehman asked her out for dates. After her second refusal, he put his hands around her throat and threatened her.

Rys once heard Lehman say that Adolf Hitler did not finish his job because he did not kill all the Polish and Jewish people. Lehman also said that he should shove those people into the ovens. Lehman once saw women having lunch and asked her what were "all those dumb Polacks" doing in the hallway. When Lehman fired the crew, Rys complained that Palka should be present. Lehman then said that he would fire "that dumb Polack, too."

While Rys worked for respondent, she also had a 40-hour job working at a factory. The factory closed in the fall of 1986. She was not working at the time of the hearing. She could not find work. She wanted to work two 40-hour-week jobs. She was a Wright College student. In her free time, she worked in her house sewing dresses.

Daniel L. Lehman testified to the following. He never asked Rys to date him. He never called Palka derogatory names. Palka's national origin had nothing to do with the suspension. Workers complained about Palka. Hours were logged for persons when they did not work.

Jeffrey Searles testified to the following. He was regional manager for ISS in the Chicago area. He spent several days interviewing Palka, Lehman, and other people to investigate Lehman's charges about Palka. A decision about Palka's future at ISS depended on the results of his investigation. Palka asked him if it would help his cause if he would talk to Rys about dropping the charges. He replied that it would be up to Palka and that it would possibly be a positive influence. He also decided that Palka had been insubordinate to Lehman and others. He determined that the office staff in Chicago was not able to get along with Palka. Palka's national origin had nothing to do with his termination.

Henry L. Osmanski testified to the following at the hearing. He was the branch manager of the Pittsburgh branch. Lehman was his immediate supervisor. He had never heard Lehman use the word "Polack." No worker ever complained to him about Lehman's conduct.

Slawomir Czaja testified to the following at the hearing. He was a former employee of ISS. In a 1983 conversation, Lehman called Palka a Polish pig. Lehman also said that Palka backed up Polish people. In a 1984 conversation, Lehman said that it was a pity that Hitler did not live long enough to "clean out" the Poles.

Alvarao Martinez testified to the following at the hearing. He was a former ISS janitor. On the day he was fired, Lehman stated

that the crew was not doing the job and that Polish people were "no good." One-half of the crew was Polish. Lehman used an offensive word in referring to Polish people. Lehman once said that Hitler did not finish "the job" with Polish people.

The Commission filed an interim recommended order and decision, which made the following findings relevant on appeal. Complainants presented direct evidence that their national origin was a significant or substantial factor in ISS' decision to terminate them in violation of section 2—102(A) of the Act. (775 ILCS Ann. 5/2—102(A) (Michie 1993).) ISS did not present a preponderance of evidence to rebut the direct evidence of discrimination based on national origin. Lehman's conduct constituted unlawful harassment based on national origin and unlawful sexual harassment. The ALJ did not find credible Lehman's testimony that he did not make the derogatory remarks. The derogatory statements were evidence that a prohibited consideration was a factor in the decision to discharge both complainants. The testimony of Searles that there was no national origin discrimination was also not credible.

The Commission further found the following. Complainants tried to obtain replacement jobs. Therefore, they mitigated their damages and were entitled to back pay. Complainants were entitled to reinstatement. Rys was entitled to an award of $2,500 for emotional distress. Rys and Palka were entitled to back pay from the date of discharge until the last day of the public hearing, which was December 5, 1988. ISS was to pay complainants' attorney fees and costs.

On January 17, 1991, complainants filed a motion for attorney fees and costs and a motion to modify the back pay award until the date of reinstatement. Complainants' affidavits were attached in support. They both swore that, since the date of the hearing, they had not been able to find a replacement job and that they continued actively to look for such positions.

On May 8, 1991, the ALJ entered a recommended order that the damages be brought up to date until the actual date of reinstatement.

On May 20, 1991, complainants filed a petition with the Commission for supplemental damages through the date of reinstatement.

On March 13, 1992, the Commission entered its order and decision pursuant to the recommended order and decision submitted by the ALJ. The recommended order and decision incorporated by reference the ALJ's order. The order stated that the ALJ could also reasonably find that Palka's failure to get Rys to drop her charge was a motivating factor in the decision to terminate his employment and

that such retaliation was illegal under the Act. The Commission stated that the petition for modification had been premature but that the complainants could now petition for supplemental damages.

On April 15, 1992, ISS filed a petition for rehearing before the full Commission.

On May 21, 1992, complainants filed a petition for modification for additional damages suffered through May 27, 1992. Complainants swore in attached affidavits that they had continued to seek replacement positions.

On June 29, 1992, the petition for rehearing was denied.

ISS claims that on October 5, 1992, the Commission entered a supplemental order and decision awarding the claimants additional back pay. Complainant Rys was awarded an additional $37,800 and Palka was awarded an additional $66,906.

ISS appealed pursuant to this court pursuant to section 8—111(A) of the Act. 775 ILCS Ann. 5/8—111(A) (Michie 1993).

■ ISS first argues that the ALJ had no subject matter jurisdiction over Palka's retaliation claim because, on review of the Department's disposition of Palka's charges, the Commission found substantial evidence only for Palka's claim for harassment and because the ALJ's jurisdiction was confined to adjudicating charges found to be supported by substantial evidence.

We do not need to decide this issue concerning the retaliation claim because we uphold the award of damages of Palka for his Polish national origin discrimination claim.

ISS next argues on appeal that the Commission erred in finding that Palka was discriminatorily discharged, for the following reasons. Lehman's alleged discriminatory comments had no relationship to the legitimate business reasons for Palka's discharge. There was no evidence of discriminatory intent by the person who made the decision to fire Palka. Palka failed to prove the elements that he was performing satisfactorily and that he was replaced after his discharge by someone who was not Polish.

■ Illinois has adopted in Illinois Human Rights Act cases the analysis used by the United States Supreme Court in title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.* (1982)) and Age Discrimination in Employment Act (29 U.S.C. § 621 *et seq.* (1982)) cases. *Zaderaka v. Illinois Human Rights Comm'n* (1989), 131 Ill. 2d 172, 178, 545 N.E.2d 684.

■ *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817, established the order and nature of proof in cases arising under title VII. Plaintiff has the initial burden to prove a *prima facie* case of racial discrimination. (*McDonnell*, 411

U.S. at 802, 36 L. Ed. 2d at 677, 93 S. Ct. at 1824.) The elements of a *prima facie* case vary depending on the facts of each case. (*McDonnell*, 411 U.S. at 802 n.13, 36 L. Ed. 2d at 677 n.13, 93 S. Ct. at 1824 n.13.) After complainant has met his burden, then the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the employee's rejection. (*McDonnell*, 441 U.S. at 802, 36 L. Ed. 2d at 678, 93 S. Ct. at 1824.) The complainant then has the opportunity to show that the stated reason for the complainant's rejection was pretextual. (*McDonnell*, 441 U.S. at 804, 36 L. Ed. 2d at 679, 93 S. Ct. at 1825.) Complainant can meet his ultimate burden of proving intentional discrimination either by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation was unworthy of credence. *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 256, 67 L. Ed. 2d 207, 217, 101 S. Ct. 1089, 1095.

*Whitaker v. Human Rights Comm'n* (1989), 184 Ill. App. 3d 356, 360, 540 N.E.2d 361, stated that an element of the *prima facie* discrimination discharge case under the Act was replacement by someone who was not a member of the same protected group. We believe that this is an incorrect statement. *Whitaker* relied upon *Pioneer Life Insurance Co. v. Woodard* (1987), 152 Ill. App. 3d 236, 242-43, 504 N.E.2d 230, 235, but that case stated only that part of a *prima facie* case could be established by proving that, after a black employee's discharge, the employer assigned a white employee to perform the same work. The court stated:

"No court has stated that each element must be proved to establish a *prima facie* case. 'This, of course, was not intended to be an inflexible rule *** "[t]he facts necessarily will vary *** and the specifications *** of the prima facie proof required *** is not necessarily applicable in every respect to differing factual situations." ' *Furnco Construction Corp. v. Waters* (1978), 438 U.S. 567, 575-76, 57 L. Ed. 2d 957, 966, 98 S. Ct. 2943, 2949, quoting *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802 n.13, 36 L. Ed. 2d 668, 677-78 n.13, 93 S. Ct. 1817, 1824 n.13." *Pioneer*, 152 Ill. App. 3d at 243.

*St. Mary of Nazareth Hospital Center v. Curtis* (1987), 163 Ill. App. 3d 566, 569, 516 N.E.2d 813, also refers to a replacement similar to that in *Whitaker*: the assignment of a white employee to perform the same work as a discharged racial minority employee. *Flowers v. Crouch-Walker Corp.* (7th Cir. 1977), 552 F.2d 1277, 1282, upon which it relies, did not state that such replacement was an element of all *prima facie* cases.

The first circuit has stated that the replacement of the discharged employee with a person outside his protected group is not an element of a *prima facie* title VII case. (*Cumpiano v. Banco Santander Puerto Rico* (1st Cir. 1990), 902 F.2d 148, 155.) The court stated that the critical determination in title VII cases is whether an impermissible consideration was a substantial motivating factor in an adverse employment decision. (*Cumpiano*, 902 F.2d at 155.) The eighth circuit also has rejected the argument that replacement with someone outside the claimant's class is an element of a *prima facie* title VII case. *Walker v. St. Anthony's Medical Center* (8th Cir. 1989), 881 F.2d 554, 558.

As the nature of a *prima facie* case varies according to the case, it should not be an essential element of proving of a *prima facie* Illinois Human Rights Act case that the discharged employee was performing satisfactorily and that he was replaced after his discharge by a member of an unprotected class. One could be performing a job in an unsatisfactory manner but all or part of the motivation for discharge could nevertheless be unlawful discrimination. And, an employee could be replaced with someone of the same class for a reason consistent with discharge based on unlawful discrimination. One such reason could be to strengthen the employer's defense against charges filed by the discharged employee.

■ The record does not show who replaced plaintiff. But, we find that Palka proved unlawful discrimination based on the anti-Polish animus of his supervisor. Although Palka's supervisor did not have the authority to fire him, his supervisor sought approval from Searles, who actually fired Palka for pretextual reasons.

ISS articulated insubordination and failure to meet performance standards as legitimate and nondiscriminatory reasons for the discharge. Performance failure was not supported by the record. ISS did not prove its claim that Rys falsified payroll records and that Palka was involved. Searles also testified that office staff in Chicago was not able to get along with Palka, but Searles did not testify how he made this determination, and no one else testified to this alleged concern. The record does show that Palka did not follow an oral order to cut the crew hours. But, the ALJ did not find Searles' and Lehman's testimony to be credible and found that it was more likely than not that national origin discrimination was the basis for Palka's discharge.

The Commission found that Palka's failure to get Rys to drop her charges was an illegal retaliatory motivating factor in the Palka termination decision. For the Commission's consideration in future cases, we note that the issue of whether retaliation for the failure to

persuade another employee to drop sexual harassment charges is a civil rights violation under section 6—101(A) (775 ILCS Ann. 5/6—101(A) (Michie 1993)). However, we do not need to decide this issue here as neither party has raised it and because we can uphold the award to Palka on the basis of national origin discrimination.

ISS next argues that the ALJ had no basis for awarding damages to Rys, for the following reasons. She did not submit any tax returns or other proof to establish damages. She had to establish her actual earnings after discharge until the hearing. She stated only that she has not worked two 40-hour-week jobs since her discharge and she was currently a student and sewed dresses in her free time. The sewing should have been considered interim earnings to be subtracted from her damage award.

■ Section 8A—104(B) provides that, upon finding a civil rights violation, a hearing officer may recommend, and the Commission or any three-member panel thereof may provide for, relief in the form of payment of "actual damages *** as reasonably determined by the Commission, for injury or loss suffered by the complainant." (775 ILCS Ann. 5/8A—104(B) (Michie 1993).) Actual damages include compensation for emotional harm and mental suffering. (*Village of Bellwood Board of Fire & Police Commissioners v. Human Rights Comm'n* (1989), 184 Ill. App. 3d 339, 355, 541 N.E.2d 1248.) A complainant in an employment discrimination case is required to make reasonable efforts to seek subsequent employment. (*Chas. A. Stevens & Co. v. Human Rights Comm'n* (1990), 196 Ill. App. 3d 748, 756, 554 N.E.2d 976.) The employer has the burden of proving that the employee failed to mitigate damages. *Stevens*, 196 Ill. App. 3d at 757.

■ Rys testified that she wanted to work two 40-hour-week jobs, as she had been doing, but that she could not find work. She was not cross-examined by ISS on the extent of her efforts to seek work. The evidence, though bare, was sufficient to establish that she did not find a replacement job. There was no testimony that she earned money from sewing. The record does not contain evidence that Rys earned any money after her discharge other than from her work in the factory, which ceased in the fall of 1986. As the parties stipulated to Rys' hourly rate while working for ISS, we hold that Rys adequately proved her actual damages for lost employment.

■ ISS finally argues that the Commission erred by modifying the damage award, for the following reasons. After the final order was entered by the Commission in March 1992, complainants filed a motion to supplement the damage award for additional back pay. The affidavits were vague because they only stated that the complainants

continued to seek a position. ISS had no opportunity to pursue any arguments that the complainants were not entitled to damages. The Commission sought no evidence to supplement the affidavits. The Commission delayed in granting the motion until all proceedings before it were concluded and the appeal had been filed.

We note that ISS failed to file a response to the May petition for modification for additional damages and that ISS did not seek a hearing on the issue of additional damages. ISS had the opportunity to challenge the petition and to request a hearing, and therefore due process was satisfied.

In addition, the evidence before the Commission was sufficient to award additional damages. Complainants were not required to submit their income tax returns, although they would have been appropriate evidence on the issue of damages. Complainants swore in their affidavits that they continued to seek work. We hold that ISS did not meet its burden as employer to establish failure to mitigate damages.

A copy of the order awarding additional back pay damages only appears in an appendix to a brief and not in the record. But, as it is not disputed that the order was entered, we will address ISS' argument. We hold that the Commission did not err in modifying its order to award additional back pay. The additional damages were for damages suffered after the hearing, and therefore they could be calculated only later. Section 8A—103(G) permits modification of an order at any time before a final order of the reviewing court. 775 ILCS Ann. 5/8A—103(G)(1) (Michie 1993).

■ We disagree with the finding by the Commission that Rys was entitled to an award of only $2,500 for emotional distress. Based on the evidence, Rys should have been awarded a much higher amount. In the future, the Commission should examine more closely the injury caused by the offending party. In this case, however, we are bound by the small award entered by the Commission.

■ We remand so that complainants can petition for the award of any additional damages that complainants have incurred since the hearing and not covered by any existing Commission order for additional back pay. Although this opinion is a final order of a reviewing court within the meaning of section 8A—103(G) (775 ILCS Ann. 5/8A—103(G) (Michie 1993)), the Commission may still award additional damages on remand. The purpose of section 8A—103(G) is to prevent the Commission from making or setting aside its order while an appeal is pending. Section 8A—104(B) requires the payment of actual damages for a complainant's injury (775 ILCS Ann. 5/8A—104(B) (Michie 1993)), and therefore the Commission would not be providing complete relief to complainants if it does not award ad-

ditional damages warranted by complainants' continued inability to find adequate substitute employment and ISS' failure to reinstate complainants. ISS should be given the opportunity on remand to challenge the petition and to request a hearing.

■ Complainants argue that the order of reinstatement must be affirmed because ISS did not raise the issue on appeal. ISS responds that the Commission did not order reinstatement but that there were only "stray" comments by the ALJ referring to reinstatement.

The order of the Commission did not provide that complainants were to be reinstated, but it did state that it incorporated by reference the ALJ's recommended order, and the ALJ stated in the body of the order that complainants were entitled to reinstatement. As ISS did not raise on appeal the propriety of that reinstatement order, the order is affirmed.

The order of the Commission is affirmed, and the case is remanded to the Commission.

Affirmed and remanded.

RIZZI and TULLY, JJ., concur.