JOSE GONZALEZ, Petitioner, v. THE HUMAN RIGHTS COMMISSION *et al.*, Respondents.

First District (4th Division)   No. 88—0600

Opinion filed February 2, 1989.

Stephen Stern and Brian Smith, both of Legal Assistance Foundation of Chicago, of Chicago, for petitioner.

Vedder, Price, Kaufman & Kammholz, of Chicago (Richard H. Schnadig and Kim A. Liffert, of counsel), for respondents.

JUSTICE LINN delivered the opinion of the court:

Petitioner, Jose Gonzalez, was discharged from St. Anne's Hospital. He filed a charge with the Illinois Department of Human Rights, alleging that the hospital had discharged him in retaliation for his previously filing discrimination charges against St. Anne's. The Human Rights Commission (Commission) dismissed his complaint as being untimely filed and therefore did not reach the merits.

Gonzalez appeals, contending that his complaint was improperly dismissed because the 180-day period for filing charges in accordance with the Illinois Human Rights Act (Act) (Ill. Rev. Stat. 1983, ch. 68, par. 1—101 *et seq.*) is not a jurisdictional limitation, but rather a statute of limitations that can be equitably tolled and should have been tolled under the circumstances of this case. He had given his typed and signed statement of the charge to the agency within the 180-day period, but it had not been retyped on the Department's charge form and verified until after that period. Gonzalez additionally argues that

the oath and affirmation requirement of the Act is not jurisdictional in the sense that it must be satisfied at the time charges are required to be filed.

We reverse and remand.

BACKGROUND

Gonzalez, a former mental health technician with St. Anne's Hospital, was discharged on July 28, 1983. He filed charges with both the Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights (Department), claiming that the discharge was discriminatory. The EEOC found no reasonable cause for the charge and therefore issued its letter dismissing the charge and notifying Gonzalez of his right to sue in the Federal district court. The Illinois Human Rights Department, however, eventually determined that Gonzalez' charge was based on substantial evidence and filed a complaint with the Human Rights Commission, naming St. Anne's Hospital as respondent.

The hospital filed a motion to dismiss on jurisdictional grounds. The administrative law judge (ALJ) held an evidentiary hearing on the motion because of her belief that there were factual issues relating to the timeliness of the filing of the charge.

At the hearing Gonzalez testified that he contacted his attorney on January 10 or 11, 1984, concerning a possible action under the Illinois Human Rights Act (Ill. Rev. Stat. 1983, ch. 68, par. 1—101 *et seq.*). The attorney typed up the charge using the Illinois Department of Human Right's client information sheet (CIS), a form that provides spaces for the pertinent information and for signature, but no space for notarization or oath.

On January 20, 1984, at 12:11 p.m., Gonzalez took his signed charge (the CIS form) to the Department for filing. This was 176 days after his discharge. When he went to the Department's office to file the charge, he was told to wait for the Department to retype it, after which he was to sign it and have it notarized. At this time, the general procedure of the Department was for the CIS form to be submitted to the receptionist for stamping, after which it was given to an intake investigator, who would interview the complaining party. Gonzalez waited two or three hours to be called. However, at 4:30 or 5 p.m. a Department representative told Gonzalez that no typist or notary was available and that he should go home. Someone would then mail him the retyped charge for his signature and for notarization. The receptionist assured Gonzalez that there would be no problem with this procedure.

Gonzalez further testified at the hearing that he called the Department three or four days later to inquire about the charge. He was told that it was on the way. On January 31, 1984, seven days after the expiration of the 180-day period, the Department mailed the charge to him. On that same day, the Department mailed a letter to St. Anne's, notifying the hospital that Gonzalez had "filed a charge" against the hospital, which the Department "docketed *** as an unperfected charge pursuant to its Rules and Regulations," and that the enclosed charge did not require a response at that time since it was unperfected.

On February 13, 1984, Gonzalez returned a signed and notarized copy of the charge, which the Department received on the twenty-third of the month. The Department then investigated the charge and, based upon a finding of substantial evidence of unlawful discrimination, filed its complaint with the Illinois Human Rights Commission against St. Anne's on February 7, 1986.

St. Anne's filed a motion to dismiss the complaint on the grounds that the Department lacked jurisdiction because Gonzalez' charge was not filed within the 180-day limitation set out in section 7—102(A)(1) of the Act. (Ill. Rev. Stat. 1985, ch. 68, par. 7—102(A)(1).) In response, the Department, on Gonzalez' behalf, denied the untimeliness argument, stating that the requirements of the Act had been satisfied by his filing of the CIS form within the 180-day period.

The Department told the ALJ that in over 5,000 cases since July 1980, it had docketed unperfected charges. This procedure allowed aggrieved parties to file the CIS form as a charge, without the oath or affirmation, and permitted the treatment of such filings as timely once the Department received back from the claimants retyped charges that were signed and sworn.[1] As far as the Department was concerned, the CIS form contained sufficient information to constitute a charge within the Act. The Act itself does not require any specific form of pleading. See Ill. Rev. Stat. 1987, ch. 68, pars. 1—103(C) (defining charge as "an allegation filed with the Department by an aggrieved party"), 7—102(A)(2) ("The charge shall be in such detail as to substantially apprise any party properly concerned as to the time,

---

[1]The Department's CIS form allows the aggrieved party to set out the pertinent allegations. There is a space for signature, but not for oath or notarization. The Department then takes the CIS information and retypes it on another form. This form, entitled "Charge of Discrimination," contains a printed block that states "I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief." There is a space for the complainant's signature underneath, as well as a space for notarization.

place, and facts surrounding the alleged civil rights violation").

The ALJ's recommended order and decision concluded that the charge should be dismissed, finding that the charge was not timely; therefore, the Department and Commission had no jurisdiction over the matter. Further, the ALJ held that the tolling doctrine was inapplicable and could not waive the jurisdictional limit imposed by section 7—102(A) of the Act.

The Department filed lengthy exceptions to the recommended order and decision, and the hospital filed its response, for the Commission's review.

On January 25, 1988, the Commission entered its order and decision dismissing Gonzalez' complaint on the ground that the 180-day period was jurisdictional and that the CIS form did not meet the oath and affirmation requirement of the Act. By its decision, the Commission rejected the Department's contention that its administrative rule conferred jurisdiction under the Act because the rule allowed the submission of a CIS form to be treated as as valid charge, subject to being perfected by oath. Further, the Commission ruled that Gonzalez' own conduct, not that of the Department, had prevented the timely filing of the charge.

OPINION

■■ We note, initially, that the ALJ and Commission did not accord much weight to the Department's admitted practices and procedures. Unless these procedures clearly violate the intent of the Human Rights Act, they cannot be considered void. The Department is the body charged with implementing a claimant's filing under the Act; absent compelling reasons, Gonzalez should not lose the right to a hearing on his claim on the grounds that the Department's instructions to him were incorrect.

The ultimate issue in this case, however, is whether Gonzalez satisfied the statutory requisites for filing his charge. The two related aspects of this issue that the parties raise are: (1) whether the 180-day filing period is jurisdictional (as opposed to being a statute of limitations subject to equitable doctrines, such as tolling) and (2) whether the absence of the claimant's oath or affirmation at the time the charge is filed is fatal when the charge itself is filed within 180 days but the oath is supplied later. In our view, the case turns on whether the oath, when supplied, cured any technical defect in the charge that Gonzalez had filed within the 180-day period. If so, the filing was timely.

The provision that governs the timely filing of the charge states,

"Within 180 days after the date that a civil rights violation allegedly has been committed, a charge in writing under oath or affirmation may be filed with the Department by an aggrieved party or issued by the Department itself under the signature of the Director." Ill. Rev. Stat. 1987, ch. 68, par. 7—102(A)(1).

St. Anne's argues that the legislature intended the 180-day period in section 7—102(A)(1) to be jurisdictional because section 7—102(B), which sets out the 10-day period in which the Department is to give notice of the charge to the respondent, contains an express caveat that the time period in that subsection "shall not be construed to be jurisdictional." (Ill. Rev. Stat. 1987, ch. 68, par. 7—102(B).) The hospital reasons that because the legislature could have put a similar provision in subsection A, but did not, the reasonable construction (by negative implication) is that the 180-day period in that section *is* jurisdictional.

We are not persuaded that section 7—102(A)(1) must be construed as jurisdictional in the sense urged by respondent simply because the legislature specifically expressed an intent in subsection B on the effect of an entirely separate time period. The legislature was silent as to the effect of the 180-day period in subsection A, when it could have included express language making that period jurisdictional. Without a divining rod, we cannot discover the legislative intent on this issue.

■ ■ To determine whether a statutory time period is "jurisdictional," rather than one that can be tolled or waived in some instances, the courts generally attempt to decide whether the right of action created by the particular act is a substantive right unknown at common law and one that also makes the time for filing the charge an inherent element of the right created. If so, it cannot be treated as a statute of limitations. (*Pickering v. Human Rights Comm'n* (1986), 146 Ill. App. 3d 340, 346-49, 496 N.E.2d 746; *cf. Springfield-Sangamon County Regional Plan Comm'n v. Fair Employment Practices Comm'n* (1978), 71 Ill. 2d 61, 373 N.E.2d 1307) (noting that under predecessor Fair Employment Practices Act, 180-day filing period, while "mandatory," was not "jurisdictional" in the sense that it could not be waived). In other words, if meeting the time period is a condition precedent of the plaintiff's right to seek a remedy, the given time period is jurisdictional. (See *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 209-10, 486 N.E.2d 893, 895.) If the period is treated as a statute of limitations, however, the equitable tolling doctrine or other means of abatement may apply if the circumstances justify it. (*E.g., Zipes v. Trans World Airlines, Inc.* (1982), 455 U.S. 385, 393, 71 L. Ed. 2d 234, 243, 102 S. Ct. 1127,

1132.) The difference in treatment is that a jurisdictional limitation is considered a part of the liability or cause of action itself, while a statute of limitations operates to preclude the remedy only. *Fredman Brothers Furniture Co. v. Department of Revenue* (1985), 109 Ill. 2d 202, 486 N.E.2d 893.

Under the hospital's analysis, the statute is jurisdictional and the charge that Gonzalez attempted to file within the 180-day period was insufficient because it did not contain the oath or affirmation of Gonzalez at that time. Under this theory the facts surrounding his filing of the charge and what he was told about filing procedures is irrelevant; it would only be pertinent to the application of an equitable doctrine that would abate the limitations period.

Both the ALJ and the Commission relied heavily on the Second District Appellate Court's decision in *Pickering v. Human Rights Comm'n* (1986), 146 Ill. App. 3d 340, 496 N.E.2d 746. The plaintiff in that case filed a charge of age and handicap discrimination almost a year after his termination. Rejecting the argument that section 7—102(A) of the Act should be treated as a statute of limitations, the court concluded that since "the act itself creates substantive rights unknown at common law and at the same time prescribes the time within which a party must file" the charge, "the 180-day filing requirement must be deemed to be jurisdictional." 146 Ill. App. 3d at 346, 496 N.E.2d at 750.

In *Pickering*, the claimant had done nothing to pursue his claim for almost a year after the alleged discrimination, despite conferring with an attorney, and the Department dismissed the charge. The Commission sustained the dismissal, citing lack of jurisdiction over the matter. The trial court, on administrative review, reversed and remanded for a hearing on the plaintiff's contention that tolling, waiver, or other equitable considerations applied. In reversing the trial court, the appellate court concluded that once it found the 180-day period to be jurisdictional, no equitable doctrines were available to circumvent that limit, with the narrow exception of estoppel. Citing *Lee v. Human Rights Comm'n* (1984), 126 Ill. App. 3d 666, 467 N.E.2d 943, the *Pickering* court held that the 180-day period would be extended only if the agency's misleading conduct caused the claimant to miss the deadline. *Pickering*, 146 Ill. App. 3d at 349, 496 N.E.2d at 752.

Even under *Pickering*, Gonzalez would appear to have a good claim to estoppel as an exception to the limitation period. We do not adopt *Pickering*'s rationale or holding that the 180-day period is jurisdictional, however. Because of our conclusion that the filing in this case was timely, we need not decide the broader question of whether

the filing period in section 7—102(A)(1) is jurisdictional or a statute of limitations.[2]

■■ We believe that the narrower, dispositive issue in this case centers on the oath and affirmation requirement of section 7—102(A): Does the unperfected charge, timely filed, become a nullity if the oath is supplied after the 180-day period, or does the supplying of the oath "relate back" to the original filing? The hospital argues that the absence of Gonzalez' verified signature on the CIS form he filed with the Department is absolutely fatal to his ability to maintain his claim. Like the jurisdictional argument, this one provides for no leeway, no relaxation of rigid rules.

As an alternative argument, the hospital cites Gonzalez' own conduct as being responsible for the dismissal of his charge. This suggests, perhaps unfairly, that one who files a defective charge toward the end of the limitation period is less diligent than one who starts the filing procedure earlier and therefore has a better chance of curing any defect within the 180-day period.

Gonzalez does not contend that the Department should act upon unsworn charges or that he was excused from furnishing his oath for the charge contained in his CIS form. Rather, he points out that the

---

[2]*Pickering* acknowledged that one of the criteria for determining whether the limitation period is jurisdictional is whether the right in question is created by the statute or whether the statute merely provides the procedural framework for redressing the right. The Illinois Human Rights Act states its aim is "to secure and guarantee the rights established by Sections 17, 18, and 19 of Article I of the Illinois Constitution of 1970." (Ill. Rev. Stat. 1987, ch. 68, par. 1—102(C).) Several courts view the Act as the procedural vehicle for enforcing the constitutional right to be free from unlawful discrimination. (*E.g., Thakkar v. Wilson Enterprises, Inc.* (1983), 120 Ill. App. 3d 878, 458 N.E.2d 985; *Dilley v. Americana Healthcare Corp.* (1984), 129 Ill. App. 3d 537, 472 N.E.2d 596.) *Pickering's* holding that at least some of the rights secured in the Act were of statutory, rather than constitutional, origin apparently influenced the court's decision that the 180-day period was an inherent part of the cause of action and thus jurisdictional.

We believe, however, that the more persuasive authority on the jurisdictional issue is the United States Supreme Court's interpretation of the Federal counterpart to the Illinois Human Rights Act. In *Zipes v. Trans World Airlines, Inc.* (1982), 455 U.S. 385, 393, 71 L. Ed. 2d 234, 243, 102 S. Ct. 1127, 1132, the Court interpreted Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* (1970), holding that filing a timely charge of discrimination with the EEOC was not a jurisdictional prerequisite to suit in the Federal court but was in the nature of a statute of limitations subject to waiver, estoppel, and equitable tolling. After enumerating its considered reasons for this construction of the time period, the Court noted that employers' right to prompt notice of claims would not be undercut by treating the period as a statute of limitations. *Zipes*, 455 U.S. at 398, 71 L. Ed. 2d at 246-47, 102 S. Ct. at 1135.

Department itself treated the unsworn CIS form as an "unperfected" charge, but a charge nonetheless, to be docketed in accordance with its rules. Section 2520.350 of the Department's rules allows the acceptance of a charge which "complies substantially" with the requirements of the Act but "which is not notarized" or is lacking other elements. Such statement is treated as an unperfected charge, to be docketed, and the Department is to send the claimant a letter specifying which elements must be supplied to perfect the charge. The very language of this section demonstrates the validity of the unperfected charge; it is not considered void, merely inchoate. The Department, in fact, takes jurisdiction over the charge; it merely declines to proceed unless and until the missing element, such as notarization, is supplied.

This practice is consonant with another Department rule, section 2520.360, which allows "a charge or any part thereof" to be "amended by the complainant to cure technical defects or omissions, or to clarify or amplify allegations made therein ***, and such amendments shall relate back to the original filing date." Under this rule, if the absence of the oath at the time the charge was filed is considered a technical omission, Gonzalez' filing was not untimely. This is how the Department viewed it.

We agree with the Department's interpretation of its own rules. Gonzalez was expressly assured by the Department that he could leave the CIS form for retyping, that it would then be mailed out for his signature and oath, and that there would be "no problem" with this procedure. The Department in fact had followed that procedure and accepted unperfected charges in thousands of cases. Following its own rules, the Department did not act on the charge until it had been perfected. The hospital was not prejudiced in any way, nor was it faced with a stale claim. Notice of the unperfected charge was sent to the hospital upon its receipt. Gonzalez supplied his notarized signature within a reasonable time after receiving the typed charge in the mail.

We do not suggest that the oath requirement is a technicality in the sense that it need never be supplied or that it is an insignificant part of the charge. Requiring a claimant to make his allegations under oath may minimize frivolous filings. However, the Department's own rules permit the filing of charges without notarization and permit liberal amendment to cure technical omissions. Since Gonzalez filed his unperfected CIS form within the 180-day period, it was not in fact untimely because the subsequent filing of the oath or affirmation "relates back" to the initial filing.

Sound support for this interpretation is found in *Choate v. Caterpillar Tractor Co.* (7th Cir. 1968), 402 F.2d 357. The Seventh Circuit

held that the oath requirement for a charge under Title VII was not a jurisdictional prerequisite to maintaining the claim. The court expressly cited the EEOC's regulation which allows aggrieved parties to amend their complaints " 'to cure technical defects or omissions, including failure to swear to the charge.' " (402 F.2d at 360, quoting 29 C.F.R. §1601.11 (1968).) Amendments made under this regulation relate back to the original filing date. 402 F.2d at 360.

As long as the original charge is filed within the 180-day period, as it was here, a liberal amendment policy makes sense. The hospital received prompt notice but did not have to act on the unperfected charge. If Gonzalez had never supplied the oath, nothing more would have happened. Moreover, if Gonzalez had waited an unreasonable amount of time before furnishing the oath he may not have been entitled to proceed on his claim. Under equitable principles, a claimant attempting to benefit from a tolling or other abatement of the 180-day period might well find himself barred by *laches* if he failed to act expeditiously.

Here, no facts indicate that Gonzalez intended to abandon his claim. Within a reasonable time after receiving the typed charge from the Department, he furnished his oath. Whether he could or should have gotten his CIS form on file before the 176th day is a factual matter that is immaterial to the legal issues raised. The ALJ accepted Gonzalez' unrebutted testimony as to the factual circumstances surrounding the filing. The Commission's comments to the effect that Gonzalez' conduct was responsible for the tardy filing are not probative on the ultimate issues in this case and may be disregarded.[3]

Based on our reading of the statute and the pertinent authorities, we hold that the CIS charge, plus the later supplied oath, satisfied section 7—102 of the Act in this case. Accordingly, the charge was not untimely filed.

For the foregoing reasons, we reverse the Commission's order and remand this cause for proceedings on the merits.

Reversed and remanded.

JOHNSON and McMORROW, JJ., concur.

---

[3]The Commission stated, "Although the Department of Human Rights was taking the position that the Complainant's CIS form was a timely charge, the Complainant, who was represented by counsel, had no right to rely on that interpretation. The Complainant's counsel had the duty to read the statute, and comply with its plain meaning."