CHARLENE MURAOKA, Petitioner, v. THE HUMAN RIGHTS COMMIS-
SION *et al.*, Respondents.

First District (6th Division)   No. 1—92—1452

Opinion filed September 3, 1993.

Smith Williams & Lodge, Chartered, of Chicago (Abraham Brustein and Grayce K. Rund, of counsel), for petitioner.

McCullough, Campbell & Lane, of Chicago (John G. Campbell, Robert B. Baker, and Bart Rinn, of counsel), for respondents.

JUSTICE GIANNIS delivered the opinion of the court:

This case arises out of an alleged violation of the Illinois Human Rights Act (Act) (Ill. Rev. Stat. 1991, ch. 68, pars. 1—101 through 9—102). Petitioner, Charlene Muraoka, appeals from the dismissal of her complaint which had been brought before the Illinois Human Rights Commission (the Commission). The Commission found that it lacked jurisdiction to consider her cause. We have jurisdiction under Supreme Court Rule 335 (134 Ill. 2d R. 335).

Petitioner suffers from multiple sclerosis and has been confined to a wheelchair since August of 1985. On December 5, 1985, petitioner resigned her position as executive secretary to the National Osteopathic Foundation (NOF) after a failed attempt to have a wheelchair ramp installed at her place of employment. She claims that she was constructively discharged. Petitioner's last day of work was December 23, 1985.

The NOF and the American Osteopathic Association (AOA) are closely affiliated, not-for-profit corporations that share the same facilities and mutually support each other pursuant to a written agreement. The AOA provides premises rent free to the NOF and also provides, at no charge, both accounting and legal services. Further, the AOA provides the NOF with access to its employee benefit programs and pays NOF employees with checks drawn upon AOA bank accounts. Under the agreement, the AOA makes all personnel and department policies for the NOF. In addition, the AOA has served on the NOF's board of directors.[1] At the time of this dispute, it appears NOF had but two employees at its central office: Lee Stein, NOF's president, and petitioner, his executive secretary. The record indicates, however, AOA had over 60 employees at this location.

On April 21, 1986, petitioner filed with the Illinois Department of Human Rights (the Department) a complaint form (referred to as a "Complainant Information Sheet" or "CIS" by the Department) alleg-

---

[1] The record is unclear, however, whether the AOA sat on the NOF's board during the relevant time period involved here.

ing discrimination against her on the basis of handicap. Included with the handwritten form was a sheet entitled "YOU MAY FILE A CHARGE," a three-page handwritten supplement detailing the alleged discrimination, as well as 10 documents in support of her claim. In response to question 2 of the form, petitioner identified the AOA as the entity that had discriminated against her. Question 5 of the form stated: "If you have been employed by the Institution, Company, Agency, etc. noted in question [5], provide the following information: JOB TITLE, DATE HIRED, WERE YOU ON PROBATION?, PRESENT OR LAST SALARY, DEPARTMENT, SUPERVISOR." Petitioner filled out the requested information and listed her department as being the NOF. She listed her supervisor as being Lee Stein. Question 10 asked petitioner to explain the reason she felt she had been the victim of discrimination. In a three-page handwritten supplement to the question, petitioner set forth the chronology of the events of her unsuccessful effort to obtain access to her work both from Stein, whom she identified as the president of the NOF, and various people at the AOA.

The supplement to the complaint form included an interoffice memorandum, dated December 4, 1985, from petitioner to Stein. In the memo, petitioner stated that, notwithstanding extended discussions with "AOA employees," she had not been provided reasonable access to her work. In a letter from Stein dated January 27, 1986, Stein identified the AOA and the NOF as parent-subsidiary organizations, respectively, and stated that it was "most regrettable that a national health care organization would be so delinquent in providing accessibility to the handicapped."

In late April, petitioner made repeated phone calls over a six-week period in an effort to reach the Department and to determine the status of her charge. Her phone calls were not returned until June 6, 1986. She claims that, when she finally was able to speak with a Department representative around June 12, 1986, she was informed that her charge would be denied by the Department. Petitioner claims not to have understood why the Department was denying her charge, but is sure that the complaint's lack of notarization was not offered by the Department as its reason for denial.

On June 12, 1986, the Department sent petitioner a letter which indicated, mistakenly, that petitioner's discrimination claim arose in August, rather than December 1985. The Department therefore determined that petitioner's complaint was not received within the 180-day limitation period mandated by the Act. This letter did not reach peti-

tioner, however, as she had moved from the address initially given to the Department.

On June 29, 1986, the 180-day time period in which petitioner was required to file her charge with the Department expired.

On September 10, 1986, petitioner, now represented by attorney Abraham Brustein, filed a Federal civil suit against both the AOA and the NOF. On November 4, 1986, following the first court status hearing of the Federal suit, Brustein informed Craig Varga, the attorney for the NOF and the AOA, of the charge filed against the two entities with the Department. Varga indicated that he had previously heard that a charge may have been filed with the Department but that, after investigation, he concluded that no charges had been filed. Thereafter, on December 22, 1986, Varga received from Brustein a copy of the CIS submitted by petitioner on April 21, 1986, including the supplemental documentation.

After his conversation with Varga, and after sending a paralegal to check the Department's files, Brustein concluded that the Department did not have any public record of a charge filed by petitioner and had not processed petitioner's complaint according to the Department's rules. In addition, Brustein concluded that the Department had mistakenly determined that petitioner's alleged violation had occurred in August of 1985.

On February 17, 1987, more than 300 days had passed since petitioner had filed her initial complaint with the Department.

Brustein began negotiations with the Department, arguing that his client's complaint had been mishandled. In a letter from Brustein to the Department dated February 19, 1987, Brustein set forth his understanding of an oral agreement between his client and the Department. Under this agreement, the Department would prepare for petitioner's signature typed, formal charges and would deem these charges to have been filed on April 21, 1986, the date petitioner filed her initial complaint. This letter also indicates that the Department agreed to accept April 21, 1986, as the day upon which its investigation of petitioner's claim commenced. These charges were prepared by the Department and sent to her on February 24, 1987.

On February 27, 1987, Brustein returned the charges, now notarized, to the Department. Because the Department had named only the AOA and not the NOF as a respondent in the prepared charges, however, Brustein altered the charge form. In his cover letter to the Department he wrote:

"I have added as a respondent the National Osteopathic Foundation. In the original materials submitted by Ms. Mu-

raoka dated April 21, 1986, in answer to question no. 5, she indicated that she was an executive secretary for the National Osteopathic Foundation. The National Osteopathic Foundation is an affiliate of the American Osteopathic Association. It remains unclear to me whether Ms. Muraoka was an employee of the American Osteopathic Association, the National Osteopathic Foundation, or an employee of both entities."

On March 12, 1987, petitioner filed a new complaint directly with the Commission pursuant to the terms of section 7A—102(G)(2) of the Act. (Ill. Rev. Stat. 1991, ch. 68, par. 7A—102(G)(2).) This section provides that an aggrieved party may file a complaint directly with the Commission within 30 days of the expiration of the Department's 300-day investigation period. On March 13, 1987, the Commission set the matter for hearing and gave formal notice to both the AOA and the NOF.

On May 26, 1987, the AOA and NOF filed a motion to dismiss the case for lack of jurisdiction. The NOF also filed a motion seeking to dismiss the case on the grounds that it was not properly named as a respondent within the initial 180-day statutory period.

On October 13, 1988, Administrative Law Judge Alfred G. Burton, Jr., recommended to the Commission that the case be dismissed on jurisdictional grounds, citing the Commission's decision in Gonzalez v. St. Anne's Hospital (1988), Charge No. 1984 CF 1488. On February 2, 1989, however, the appellate court reversed Gonzalez v. St. Anne's Hospital. (*Gonzalez v. Human Rights Comm'n* (1989), 179 Ill. App. 3d 362.) On March 31, 1989, the Commission ordered Judge Burton to reconsider his ruling in light of the *Gonzalez* reversal.

On July 26, 1990, Administrative Law Judge Patricia A. Patton, substituted for Judge Burton, entered an order recommending that the Commission deny AOA's motion to dismiss on all grounds, but also recommending that NOF be dismissed because NOF had not been named by petitioner in her April 21, 1986, complaint. Judge Patton distinguished the appellate court's decision in *Gonzalez* and stated that the NOF would be unduly prejudiced by the prosecution of the action against it.

On February 1, 1991, while petitioner's exceptions to ALJ Patton's order were still pending before the Commission, AOA and NOF filed a motion to dismiss petitioner's cause on grounds that the cause was not filed with the Department within 30 days of the expiration of the Department's 300-day investigatory period. Ill. Rev. Stat. 1991, ch. 68, par. 7A—102(G)(2).

On May 14, 1991, Administrative Law Judge Rebecca R. Pallmeyer issued a recommended order to the Commission in which she indicated that petitioner's cause before the Commission should be dismissed without prejudice because it was not filed within 30 days of the expiration of the Department's 300-day investigation period. Judge Pallmeyer concluded that petitioner's complaint before the Commission was premature as the Department's 300-day investigation period commenced when petitioner filed a notarized charge with the Department on February 27, 1987.

On April 6, 1992, the Commission issued its order and decision after considering the decisions of both Judge Patton and Judge Pallmeyer. In Part A of its decision, the Commission considered petitioner's April 21, 1986, CIS, and concluded that petitioner had not, at that time, alleged that her employer, the NOF, had discriminated against her. According to the Commission, because the NOF had not been named on April 21, 1986, petitioner's attempt to list the NOF in the formal charges filed on February 27, 1987, amounted to more than a mere technical correction which would relate back under the Department's rules. (See 56 Ill. Adm. Code §2520.360 (1991).) In Part B of its decision, the Commission determined that petitioner had filed her complaint with it prematurely, and remanded her cause against the AOA back to the Department. Commissioner Kaminkowitz dissented from Part A of the Commission's order and decision, believing that there was sufficient connection between the AOA and the NOF so that the AOA's knowledge of the impending charge could be imputed to the NOF, and that petitioner's amendment to the charge naming the NOF should relate back to the date of her complaint. See 56 Ill. Adm. Code §2520.370 (1991).

The Commission expressly found that "there is no just reason for delaying appeal with regard to this Order dismissing [NOF]." The only issue before us, therefore, is whether the NOF was properly dismissed from petitioner's cause.

■ Under the terms of the Act, an aggrieved party has 180 days to file a charge with the Department:

> "Procedures. (A) Charge. (1) Within 180 days after the date that a civil rights violation allegedly has been committed, a charge in writing under oath or affirmation may be filed with the Department by an aggrieved party or issued by the Director itself under the signature of the Director." (Ill. Rev. Stat. 1991, ch. 68, par. 7A–102(A)(1).)

The Act also provides the level of detail required in the charge:

"(2) The charge shall be in such detail as to substantially apprise any party properly concerned as to the time, place, and facts surrounding the alleged civil rights violation." (Ill. Rev. Stat. 1991, ch. 68, par. 7A—102(A)(2).)

Once these requirements are met by a petitioner, it is incumbent upon the Department to serve notice:

"(B) Notice and Response to Charge. The Department shall, within ten days of the date on which the charge was filed, serve a copy of the charge on the respondent, and shall require the respondent to file a verified response to the allegations contained in the charge." (Ill. Rev. Stat. 1991, ch. 68, par. 7A—102(B).)

The initial question which must be addressed is whether petitioner has met her obligations under section 7A—102 of the Act.

In *Gonzalez v. Human Rights Comm'n* (1989), 179 Ill. App. 3d 362, the appellate court considered whether the filing of a CIS with the Department that had not been notarized was sufficient to confer jurisdiction on the Department under the Act. Specifically, the court considered: (1) whether the 180-day filing period is a jurisdictional requirement of the Act (as opposed to being a statute of limitations subject to equitable doctrines, such as tolling) and (2) whether the absence of a claimant's oath or affirmation at the time a complaint is filed is fatal when the complaint itself is filed within 180 days but the oath is supplied later. The court noted that the 180-day period has been found to be jurisdictional in nature (*Pickering v. Human Rights Comm'n* (1986), 146 Ill. App. 3d 340), but declined to adopt this conclusion. (See *Gonzalez*, 179 Ill. App. 3d at 369 n.2.) Instead, the court decided the case on narrower grounds, finding that the Department has jurisdiction over unverified, "unperfected" charges filed within the 180-day period. In *Gonzalez*, the court determined that the Department must give notice to a respondent in such situations, but that it was under no obligation to proceed on the charges until the missing element of the charge, such as notarization, was supplied.

A review of petitioner's CIS indicates that when petitioner filed her complaint with the Department, she was uncomfortable with simply naming the AOA as the party that had discriminated against her. The CIS and the supporting documents submitted to the Department by petitioner make repeated references to both the NOF and Lee Stein, whom petitioner identified as "NOF's president." The issue of this case, however, is not whether the petitioner had the specific intent to name the NOF as a respondent in her charge filed April 21, 1986. At issue is whether petitioner's complaint is "in such detail as

to substantially apprise [the NOF] as to the time, place, and facts surrounding the alleged civil rights violation." (Ill. Rev. Stat. 1991, ch. 68, par. 7A—102(A)(2).) The NOF seeks to frame the issue as being factual in nature. It argues that the Commission's finding, that petitioner named only the AOA and not the NOF in her charge, is not against the manifest weight of the evidence. The legal effect of petitioner's CIS is one of statutory interpretation, a question of law, which does not warrant application of the "against the manifest weight of the evidence" standard. We therefore address our attention to whether the CIS initially filed by petitioner was in sufficient detail to require the Department to name the NOF as a respondent. We conclude that petitioner's CIS was sufficiently detailed to require it to prepare charges against both AOA and NOF.

■ As a general rule, courts will accord deference to the interpretation placed on a statute by the agency charged with its administration. (*City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268* (1988), 122 Ill. 2d 353, 361; *Illinois Consolidated Telephone Co. v. Illinois Commerce Comm'n* (1983), 95 Ill. 2d 142, 152.) An administrative agency's interpretation is not binding on the courts, however, and it will be rejected when it is erroneous. (*City of Decatur*, 122 Ill. 2d at 361.) Because the Act is remedial legislation, it must be construed liberally to effectuate its purpose. (See *S.N. Nielsen Co. v. Public Building Comm'n* (1980), 81 Ill. 2d 290 (construing the predecessor Fair Employment Practice Act and the Act).) The Department itself recognizes the liberality that must be afforded *pro se* complainants under the administrative and conciliatory scheme provided for under the Act. The Department's own regulations allow acceptance of any charge that "complies substantially" with the requirements of the Act, *i.e.*, identifies the victim, the perpetrators, the civil rights violation and the time during which the unlawful conduct occurred, but is unnotarized or is lacking in other elements. (56 Ill. Adm. Code §2520.350 (1991).) Such statements are accepted as "unperfected" charges, are to be docketed by the Department, and the Department is to send to the complainant a letter specifying what element must be supplied to perfect the charge.

Review of petitioner's complaint reveals that she mistakenly named the NOF as a department of the AOA, rather than as a distinct, not-for-profit, entity. In addition, because she omitted the NOF's name from her response to question 2 ("Who discriminated against you?"), the Department concluded that she did not intend to file charges against the NOF. As the NOF and the Department now concede, however, it is the Department's obligation to review the to-

tality of the facts as set forth in the complaint and it is the Department's obligation to ascertain whom the complainant fairly charges with discrimination. (*Cf. Sanchez v. Standard Brands, Inc.* (5th Cir. 1970), 431 F.2d 455; *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130* (7th Cir. 1981), 657 F.2d 890.) In *Eggleston*, the court noted:

> "Complainants often file EEOC charges without the assistance of counsel and are not versed either in the technicalities of pleading or the jurisdictional requirements of the Act itself. [Citation.] They are also not expected to file EEOC charges which specifically articulate in precise terms, a narrow legal wrong which they have suffered, rather EEOC charges are typically detailed in lay person's terms. [Citation.] It is noted, in addition, that Congress could not have intended that a person filing EEOC charges should accurately ascertain, at the risk of later facing dismissal, at the time the charges were made, every separate entity which may have violated Title VII. [Citation.] Thus, given the Act's remedial purposes, charges are to be construed with 'utmost liberality' and parties sufficiently named or alluded to in the factual statement are to be joined." (*Eggleston*, 657 F.2d at 906.)

Illinois courts look to Federal case law interpreting provisions of title VII of the Civil Rights Act of 1964 as authority for construing provisions of the Act. (*Montgomery Ward & Co. v. Fair Employment Practices Comm'n* (1977), 49 Ill. App. 3d 796.) While petitioner's allegations might not have been adequate had she, for example, filed a civil suit in the circuit court, we believe that the concerns expressed in the above quotation should guide our own review of petitioner's claim.

Petitioner's complaint contains numerous references to the NOF, particularly within the complaint's supporting documents. Additionally, petitioner's CIS clearly indicated that she had unsuccessfully attempted to secure a wheelchair ramp from NOF's president, Lee Stein. While petitioner also alleged that Stein assisted her in her attempts to secure the ramp, and that AOA blocked these attempts, the Department should have been aware that Mr. Stein and NOF are not the same legal entity and that Mr. Stein's actions may not necessarily have indicated the official position of the NOF. We simply reject the NOF's argument that "there is no way the Department could have believed Muraoka was levelling a charge of discrimination against the NOF."

Having concluded that petitioner did, in fact, name the NOF in her initial complaint "in such detail as to substantially apprise" the NOF of the charges against it (Ill. Rev. Stat. 1991, ch. 68, par. 7A–102(A)(2)), the question becomes whether the Department's failure to include the NOF in the formal charges should be fatal to her cause of action.

In *Gonzalez*, the complainant filed a CIS form, the same form as filed by petitioner, 176 days after his discharge. When the complainant went to the Department to file the form, he was told to wait for the Department to retype it as a formal charge, after which he was to sign it under oath. (*Gonzalez*, 179 Ill. App. 3d at 364.) After a several hour wait, the complainant was told that no typist or notary was available and that the Department would mail him the formal charge for his signature and notarization. (*Gonzalez*, 179 Ill. App. 3d at 364.) Notice of the CIS charge was promptly sent to the respondent. (*Gonzalez*, 179 Ill. App. 3d at 365.) However, by the time the complainant received and sent back the formal charge, the limitations period had expired.

In resolving the issue, the court found that petitioner's CIS form constituted an "unperfected charge" under the Act and noted that section 2520.360 allowed the petitioner to cure technical defects in the charge if made within a reasonable time after the complainant received the typed charge from the Department. Such amendments related back to the date the original CIS had been filed.

■ Once it is determined that petitioner named the NOF in her complaint under the terms of the Act, petitioner falls squarely within the rule that emerges from *Gonzalez*. Petitioner filed her CIS on April 21, 1986, well within the 180-day limitations period. Petitioner's CIS complied substantially with the requirements under the Act and was sufficient to require the Department to docket her complaint, serve notice on the AOA and the NOF and prepare formal charges. As with *Gonzalez*, all petitioner's CIS lacked was notarization. The Department had the burden of correctly processing her CIS, and yet for almost 10 months failed to do so, even with regard to the AOA. When the Department finally did prepare its formal charges, on February 24, 1987, petitioner noted that the NOF had not been properly named. On February 27, 1987, three days later, a reasonable time after receiving the typed charge in the mail, petitioner filed with the Department her signed and notarized charge naming both the AOA and the NOF. Petitioner's changes to the formal charges prepared for her by the Department merely conformed the charges to the factual

allegations contained in her original CIS.[2] Thus, under *Gonzalez*, petitioner's perfected (notarized) charge filed on February 27, 1987, related back to the date she filed her unperfected charge on April 21, 1986.

Section 7A—102(B) requires the Department to serve notice on an employer within 10 days of receiving a charge. Both the NOF and the Department argue that the rule provided by *Gonzalez* cannot be properly applied here because it would be unfair to the NOF for it to have to respond to charges of which it did not receive notice within this 10-day period. The NOF argues that even if it can be said to have received notice on November 4, 1986, when petitioner's counsel is alleged to have informed NOF lawyers that charges were pending with the Department, it did not receive timely notice under the Act. It should be noted, however, that the Act specifically states that the 10-day notice provisions are not jurisdictional in nature (Ill. Rev. Stat. 1991, ch. 68, par. 7A—102(B)). We believe this is a clear indication that the legislature did not intend the failure of the Department to serve charges within the 10-day period to prejudice a complainant. The court's decision in *Gonzalez* itself notes that a petitioner must not lose the right to a hearing on his claim due to the failure of the Department to fulfill its statutory obligations. (*Gonzalez*, 179 Ill. App. 3d at 366; see also *Moss-American, Inc. v. Fair Employment Practices Comm'n* (1974), 22 Ill. App. 3d 248, 254.) While Administrative Law Judge Patton and the Commission have each indicated that the NOF was prejudiced by the Department's failure to give notice, there is no indication in the record of what this specific prejudice might be, and certainly no indication that this prejudice amounted to a deprivation of the NOF's due process rights.

---

[2]The Commission's decision seems to imply that the changes made by petitioner to the typed, formal charges prepared by the Department must be either a technical amendment (56 Ill. Adm. Code §2520.360 (1991)) or a substantive change under the Department's rules for adding a party (56 Ill. Adm. Code §2520.370 (1991)). After *Gonzalez*, however, it is clear that the CIS filed by petitioner is an unperfected (unnotarized) "charge" under section 7A—102(A) of the Act. Because the Department's own rules require it to promptly serve notice of such a "charge" on the respondent, and because petitioner in fact named the NOF in her charge under the terms of section 7A—102(A), we conclude that petitioner did not need either to amend her charge under section 2520.360 or add a party to her complaint under section 2520.370. At most, petitioner needed only to give notice to the Department that it had failed to properly prepare the formal charges, which she did. *Cf. Robinson v. Human Rights Comm'n* (1990), 201 Ill. App. 3d 722, 729-30 (finding petitioner's act of signing formal charges and failing to raise objection thereto created presumption that they fairly stated his claims).

We conclude that petitioner's CIS charge, plus her subsequently supplied oath, satisfied section 7A—102 of the Act. Accordingly, her charge was timely filed. We therefore remand petitioner's claim back to the Commission for proceedings consistent with this opinion.

Reversed and remanded.

EGAN and RAKOWSKI, JJ., concur.