NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with

Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 1, 2013[*]
Decided October 2, 2013

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 13-1739

| | |
|---|---|
| JASON LEE NIEMAN, *Plaintiff–Appellant,* | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 12 C 1012 |
| KEITH HALE d/b/a INSURANCE SEARCH GROUP, *Defendant–Appellee.* | James E. Shadid, *Chief Judge.* |

**O R D E R**

Jason Nieman applied for a job with Peoria-based RLI Insurance Company, which had retained Keith Hale to conduct a search for qualified applicants. After the position was given to another candidate, Nieman filed a lawsuit in an Illinois court naming as defendants RLI, several company employees involved in the hiring process, and Hale (who does business under the name Insurance Search Group). Nieman claimed that all of the defendants had violated the Illinois Human Rights Act, *see* 775 ILCS §§ 5/2-102, 5/6-101, and that RLI had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17. The defendants removed the case to federal court, but all of them except Hale have settled with Nieman. The district court granted Hale's

---

[*]After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2).

motion to dismiss and sanctioned Nieman on the ground that his complaint is frivolous. Nieman challenges both decisions, while Hale asks us to impose additional sanctions for pursuing a frivolous appeal. We conclude that the district court should not have granted either of Hale's motions; the claim against him will go forward, though we anticipate that the court will now exercise its discretion to remand the suit to state court.

At seventy-nine pages Nieman's pro se compliant is tedious, but Hale has never contended that it fails to state a claim under the Human Rights Act. We read the document (Nieman's third effort) as a whole, *Atkins v. City of Chicago*, 631 F.3d 823, 831–32 (7th Cir. 2011), and construe it liberally in his favor, *Marshall v. Knight*, 445 F.3d 965, 969 (7th Cir. 2006). Mostly the complaint concerns the RLI defendants; the allegations against Hale are straightforward. For our purposes, we accept those allegations as true. *See Wigod v. Wells Fardo Bank, N.A.*, 673 F.3d 547, 555 (7th Cir. 2012).

Hale lives in Texas but recruits and vets candidates for jobs with insurance carriers across the country. Nieman has a degree in finance and has worked in the industry for over 20 years. In February 2011 a colleague alerted him that a vacancy announcement on Hale's website appeared to be for a job with RLI. At the time Nieman was days away from settling a Title VII suit against his former employer, Nationwide Mutual Insurance Company. *See Nieman v. Nationwide Mut. Ins. Co.*, No. 09 C 3304 (C.D. Ill. Mar. 4, 2011). Nieman promptly sent an application to Hale via e-mail, and Hale phoned him the same day to provide details about the job and to request additional materials. After several more conversations, Hale informed Nieman that his application had been sent to RLI.

A week later, though, Hale notified Nieman that the company had said he was not suited for the job because he was not handling claims on a daily basis. Nieman told Hale that in fact he was handling claims every day, and fearing that Hale had lied about sending his application to RLI, Nieman sent a résumé directly to the company. Four days later Hale called to say that RLI now wanted to interview him. Within a week Nieman had traveled to Peoria for a brief, initial interview and then been asked to return for what Hale said would be a series of interviews with the Vice President of Claims and several of his subordinates. Those interviews lasted a total of three hours, and during each session Nieman was asked why he had left his job at Nationwide; he was not asked about his separation from other employers.

Nieman was not hired, and he suspected that his lawsuit against Nationwide was one of the reasons (at the time he also suspected that his race, age, and sex were

motivating factors). He cross-filed an administrative complaint with the Equal Employment Opportunity Commission and the Illinois Department of Human Rights. *See* 775 ILCS § 5/7A-102. The state agency took the lead, and its investigation confirmed that, after Nieman's initial interview, at least three of the six persons he met during the callback had learned about his litigation with a former employer. One of those three, the company's Claims Director, told the Department's investigator that Nieman had listed on his résumé a former employer where she had a contact; she called for a reference and found out that Nieman might be in litigation with another former employer, though with whom the contact did not know. The Claims Director shared this information with two other interviewers, but the Department's investigator was unable to confirm that RLI knew the "details" of Nieman's suit against Nationwide when he was rejected for the position. The investigator sought to interview Hale, but Hale refused. Ultimately the Department concluded that Nieman's charge was not supported by substantial evidence.

The Illinois Human Rights Act makes it unlawful for any person to retaliate against another for engaging in protected activity. *Id*. § 5/6-101(A). It is also unlawful to aid and abet another's violation of the Act or to wilfully interfere with an administrative investigation of an alleged violation. *Id*. § 5/6-101(B), (C). An aggrieved party may ask the Illinois Human Rights Commission or a circuit court to award damages or other relief. *Id*. §§ 5/7A-102, 5/8A-104. Nieman's complaint alleges that RLI refused to hire him because of his lawsuit against Nationwide; his claim against Hale is less clear, but apparently he contends that Hale shares responsibility for RLI's hiring decision and that he impeded the Department's investigation by refusing to participate. (Nieman also believes that Hale blacklisted him for jobs with other insurance companies after his rejection by RLI; a Title VII suit premised on this theory is pending in the Northern District of Texas. *See Nieman v. Hale*, No. 3:12-cv-2433 (N.D. Tex. July 23, 2013) (order dismissing complaint with leave to amend).)

Hale moved to dismiss. As we've noted, he did not contend that Nieman's complaint fails to state a claim. Instead, Hale asserted that Nieman's administrative charge is deficient and thus the claim against him cannot go forward. Before filing a state-law claim for relief under the Illinois Human Rights Act, an aggrieved party must submit a charge to the Department of Human Rights within 180 days of the unlawful conduct. 775 ILCS § 5/7A-102. That charge must include enough "detail as to substantially apprise any party properly concerned as to the time, place, and facts surrounding the alleged civil rights violation." *Id.* Hale reasoned that Nieman's charge is unsatisfactory because it does not name him or Insurance Search Group as a

respondent and, on his view, "is completely lacking in any reference" to their involvement in unlawful conduct.

Nieman countered that a party not named as a respondent may still be sued if he was notified of the charge and given a chance to participate in the administrative investigation. Nieman asserted that he had sent copies of all pertinent documents to Hale and that the Department's investigator had tried in vain to contact Hale. The Department's notice of dismissal, which Nieman submitted to the court, is replete with references to Hale and identifies him as a witness who did not reply to interview requests made by phone, by mail, and through his attorney. Nieman also submitted the original draft of the administrative charge, which a Department employee had prepared and sent to Nieman for review after his intake interview. That draft identifies Hale as the person responsible for RLI's hiring decision, but Nieman returned it with Hale's name lined out and the name of the Vice President of Claims substituted. In a transmittal letter he explained his assumption that Hale did not make the hiring decision "given the typical nature of employment recruiters."

In granting Hale's motion the district court, citing decisions interpreting Title VII, reasoned that a person not named in an administrative charge generally cannot be sued. The original draft of the charge, the court implied, was irrelevant because Nieman had removed Hale's name and discounted the likelihood that he was involved in the hiring decision. And the additional information developed about Hale during the Department's investigation, the court continued, did not help Nieman because he never submitted an amended charge to the agency. In a single sentence at the end of this discussion, the judge added that Nieman's complaint is "so vague" that no defendant "could be fairly apprised of the claim against it, much less discern a claim to relief that is plausible on its face."

Nieman moved for reconsideration. He noted, and backed up with e-mail correspondence, that before the Department had finished its investigation he *did* try to amend his charge to include Hale. He was told by the investigator that his charge could not be amended to include additional respondents, so he submitted a separate charge naming Hale as the respondent. That charge was left unresolved when the Department closed its investigation. Nieman also asserted that his complaint makes clear that RLI's management had been vague about its reasons for not hiring him, which, he said, support his contention that Hale "may have had some say" in the hiring decision and "may have acted as a 'cat's paw' in using an improper animus as to encourage the Plaintiff's disqualification."

Hale did not respond at all, and neither did the district court say anything about Nieman's efforts to encompass Hale in his administrative charge. Instead the court denied the motion to reconsider with the explanation that Nieman had been "undeterred" by a "clear message" that, as a matter of law, he could not state a claim against anyone other than RLI, the employer. The court added that it did not matter whether defendants other than RLI had been included in the administrative charge because no other defendant "could be construed as the employer in the context of this case under any conceivable stretch of the imagination." The court later returned to this theme as justification for granting Hale's motion for sanctions in the amount of $17,000.

On appeal Nieman raises a number of arguments relating to Hale, but only those challenging the dismissal of his complaint and the sanctions award merit discussion. (Much of Nieman's brief concerns defendants with whom he settled after this appeal was filed.) Before we turn to the merits, though, we must address Hale's contention that Nieman's notice of appeal is timely only as to the order awarding sanctions.

The district court dismissed the lawsuit as against Hale (and several other defendants) in February 2012. Nieman and the four remaining defendants settled and filed a stipulation of dismissal on October 3, 2012. That same day the clerk of the court entered a "remark" on the docket indicating that the "case is dismissed with prejudice pursuant to the Stipulation of Dismissal." Yet not until April 2013 did the district finally dispose of the defendants' motions for sanctions, and only then did the judge issue a judgment meeting the requirements of Federal Rule of Civil Procedure 58. That judgment was entered on the docket the day it was issued, April 8. Nieman also filed his notice of appeal that day. According to Hale the order dismissing him from the lawsuit became final in October when the last of the defendants settled, which means, he says, that Nieman had 30 days from that date to file a notice of appeal. FED. R. APP. P. 4(a)(1). It follows, Hale continues, that Nieman's notice of appeal filed in April is timely only as to the award of sanctions.

Hale is mistaken. The 30 days run not from the "final decision" but from the "entry of the judgment or order appealed from." FED. R. APP. P. 4(a)(1)(A); *Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012). When a judgment or order is required to be set out on a separate document (as was true in this case, *see* FED. R. CIV. P. 58(a)), the date of entry is postponed until the clerk enters the separate document on the docket or else 150 days have elapsed, whichever happens first. *See* FED. R. CIV. P. 58(c)(2); FED. R. APP. P. 4(a)(7)(A)(ii); *Lawuary v. United States*, 669 F.3d 864, 865 (7th Cir. 2012). The district court could have issued an order dismissing the case in October while still keeping the

sanctions motions under advisement, but it was not required to do so. And though we have said that a pending motion for sanctions will not deprive us of jurisdiction over an appeal from the merits if the district court has entered "a judgment definitively and completely disposing of the underlying action," *Cleveland v. Berkson*, 878 F.2d 1034, 1036 (7th Cir. 1989), we have not said that the court cannot withhold that judgment until after deciding the sanctions issues. A "remark" on the docket is not what we had in mind in *Cleveland*. The only judgment entered in this case was entered the day that Nieman filed his notice of appeal.

Moreover, even if we accept Hale's assumption that the October 3 "remark" on the docket constitutes the "entry of the judgment or order appealed from," the clock would not have run after 30 days as Hale insists. He could perhaps argue that Nieman's notice of appeal is untimely because he filed it more than *180* days after October 3. But Hale has not made this argument, and thus has forfeited it. *See Dolan v. United States*, 130 S. Ct. 2533, 2538 (2010); *Peterson v. Somers Dublin Ltd.*, No. 12-2464, 2013 WL 4767495 (7th Cir. Sept. 6, 2013) ("Statutory time limits for appeal can be jurisdictional, but time limits in the Rules of Appellate Procedure are not."); *Carter v. Hodge*, No. 13-2243, 2013 WL 4022531, at *2–3 (7th Cir. Aug. 8, 2013). By failing even to mention Federal Rule of Appellate Procedure 4(a)(7)(A)(ii), Hale has forfeited its protection.

We proceed to the merits. In the district court and now in this court Hale has pressed the single contention that he cannot be sued under the Illinois Human Rights Act because Nieman's first administrative charge does not name him as a respondent. The district court went further and concluded that Hale cannot be sued because he is not the employer who turned down Nieman for a job. Both contentions are wrong.

The district court's view, which even Hale does not defend, rests on the mistaken belief that the Human Rights Act is equivalent to Title VII. Nieman's complaint relies on § 5/6-101, which proscribes retaliation, aiding and abetting violations of the Act, and interfering with investigations conducted by the Department of Human Rights. 775 ILCS § 5/6-101(A–C). Those prohibitions apply to any *person*, not just to employers, and thus the court was wrong in concluding that Nieman does not state a claim simply because Hale is not the employer from whom he sought a job. *See Anderson v. Pistner*, 499 N.E.2d 566, 569 (Ill. App. Ct. 1986) (explaining that, under § 5/6-101, a person other than an employer may be liable for violating the Act).

The district court also was led astray by Hale's premise that the absence of his name as a respondent in the original charge is fatal to Nieman's lawsuit. The court

based that conclusion not on decisions from Illinois interpreting the Act but on cases discussing Title VII. The absence of a party's name from an initial charge is not dispositive, however, and Hale cites no Illinois authority to the contrary. *See Bd. of Educ. of City of Chicago v. Cady*, 860 N.E.2d 526, 534 (Ill. App. Ct. 2006); *Muraoka v. Ill. Human Rights Comm'n*, 625 N.E.2d 251, 256 (Ill. App. Ct. 1993). Instead, what's important is that a charge be "in such detail as to substantially apprise any party properly concerned as to the time, place, and facts surrounding the alleged civil rights violation." 775 ILCS. 5/7A-102. And in making that determination the state courts review all supporting documents. *See Cady*, 860 N.E.2d at 534; *Muraoka*, 625 N.E.2d at 256–59.

Hale was RLI's employment agent, and he sat squarely between the company and Nieman. Hale has never denied that Nieman copied him on all of his submissions to the Department. And neither can he deny that, given his role as the point person between RLI and Nieman, he surely would have understood from the charge that Nieman believes he did not get the job with RLI because of his prior litigation and not because he is less qualified than the other applicants. Moreover, we are not persuaded that Nieman's edits to the first draft of the charge cut in Hale's favor: Not only did the intake officer appreciate the depth of Hale's involvement in the hiring process after interviewing Nieman, but responsibility for evaluating the relevant facts "to ascertain whom the complainant fairly charges with discrimination" is the job of the Department, not the aggrieved party. *See Cady*, 860 N.E.2d at 534; *Muraoka*, 625 N.E.2d at 257.

Moreover, the district court faulted Nieman for not having sought to amend his original charge to add Hale as a respondent, and then the court disregarded Nieman's explanation that he had tried to do exactly that but was thwarted by the investigator assigned to his case. Copies of correspondence submitted by Nieman establish that he did seek to add Hale as a respondent but was told that the Department does not permit amendments to an administrative charge. That statement from the Department's investigator cannot be reconciled with the agency's published regulations, which specify that a "charge may be amended to substitute or name additional respondents." ILL. ADMIN. CODE tit. 56, § 2520.360; *see Cady*, 860 N.E.2d at 534. Likewise, the district court disregarded the supplemental charge that Nieman submitted to the Department after he was refused an opportunity to amend. That submission would have related back to the original charge if Hale "had timely notice of the original charge and the fact it might be involved therein." ILL. ADMIN. CODE tit. 56, § 2520.360(c).

If there are other reasons why Nieman's administrative charge might be deficient, Hale did not bring them to the district court's attention. The one reason he did

give—the absence of his name from the original charge—cannot justify the dismissal of Nieman's complaint. The case must be remanded for further proceedings.

Finally, there is the matter of the $17,000 sanctions award. The district court's decision to impose sanctions turned entirely on its belief that a claim against Hale under the Human Rights Act is frivolous as a matter of law. In light of our conclusion that the case against Hale can go forward, the district court's imposition of sanctions on this basis was an abuse of discretion. *See Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 839–40 (7th Cir. 2013).

We have reviewed Nieman's other arguments concerning his case against Hale, and none has merit. Accordingly, we vacate the district court's judgment to the extent it dismisses the complaint against Hale and imposes sanctions for bringing suit against him. On remand the district court should assess whether to return this litigation to state court, since the federal claims that prompted its removal have all been resolved. *See* 28 U.S.C. 1367(c); *Bond v. Atkinson*, 2013 WL 4511469, *4 (7th Cir. 2013); *RWJ Mgmt. Co. v. BP Prods. N.A., Inc.*, 672 F.3d 476, 478 (7th Cir. 2012). Hale's motion for appellate sanctions, *see* FED. R. APP. P. 38, is denied.